**Ramona WILLIAMS, Administratrix of the Estate of Bernard Williams, deceased and Ramona Williams in her own right**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY and Bryant Cobb, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 1999.

Decided Dec. 2, 1999.

Lionel Sharpless, Philadelphia, for appellants.

Thomas D. Schneider, Philadelphia, for appellee.

Before McGINLEY, J., FRIEDMAN, J. and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

The Southeastern Pennsylvania Transportation Authority (SEPTA) and Bryant Cobb (together, Appellants) appeal from an order of the Court of Common Pleas of Philadelphia County (trial court) denying Appellants' post verdict motions and

amended motion for post-trial relief in which Appellants asserted that the trial court committed various errors requiring judgment notwithstanding the verdict (JNOV) or a new trial.

This case arises out of a December 6, 1993 collision which occurred at the intersection of Olney Avenue and Mascher Street in Philadelphia between a SEPTA bus and the 1988 Buick driven by Bernard Williams (Decedent). Decedent's wife, Ramona Williams (Williams), filed a wrongful death action and a survival action against Appellants as a result of Decedent's death twenty days after the early morning accident on December 26, 1993. In her complaint, Williams alleged that Cobb, the driver of a SEPTA bus heading east on Olney Avenue, entered the intersection at an excessive rate of speed and failed to yield the right of way, as a result colliding with Decedent's car as it headed south on Mascher Street. Williams alleged that Cobb's negligent operation of the SEPTA bus caused Decedent's injuries and wrongful death.

A jury trial began on August 5, 1998.[1] Prior to trial, the trial court reviewed Appellants' proposed voir dire, striking various questions. Among those questions stricken were numbers eleven, twelve and thirteen, all of which pertained to a transit strike between SEPTA and the Transit Workers Union.

During the trial, both parties offered testimony regarding the speed of the bus and the color of the traffic signal at the time of the collision. Bus passengers Elizabeth Delgado, Willie Isaac, Janine Griffin and Irene Mercede testified for Williams. Delgado testified that the bus was late and was "rushing, speeding." (R.R. at 171a.) She also stated that, as the bus entered the intersection, the light was "yellow to

turn red." (R.R. at 177a.) Isaac testified that "the speed kept getting greater and it was like it was becoming out of control," (R.R. at 194a, 198a, 202a), and was "at least fifty to sixty" when the bus reached the intersection. (R.R. at 231a.) Isaac also stated that, as the bus approached the intersection, "the light was yellow and he was going through." (R.R. at 211a, 234a.) Griffin testified that "the driver's speed increased midway up the block, being as though the light was yellow and I guess—I assumed he was trying to make that light." (R.R. at 248a.) Notwithstanding her testimony that the light turned yellow when the bus was in the middle of the block, Griffin could not say what color the light was when the bus entered the intersection. (R.R. at 249a, 259a.) Mercede testified that the driver was "going fast but not that fast." (R.R. at 269a, 278a.)

On the other hand, Cobb, testifying on behalf of Appellants, stated that, although the speed limit was not posted, he thought that the limit was twenty to twenty-five m.p.h. somewhere along the line. (R.R. at 494a, 521a.) Cobb admitted that he did not slow down before entering the intersection, but claimed that he was travelling at only twenty to twenty-five m.p.h. at the time of the accident, that he looked both ways before entering the intersection with his foot over the brake and that he had a green light. Cobb also testified that Decedent's car hit the bus rather than the other way around. (R.R. at 496a, 587a–89a, 592a–93a, 604a.)

Both parties also offered testimony from engineers who had analyzed the accident. Williams offered the testimony of Lance Robson, who testified that the bus hit Decedent's car, not the reverse. Robson also stated that the bus was travelling forty-five m.p.h. as it entered the intersection, which was at least ten miles per hour over

1. Before trial, interrogatories and requests for production of documents were exchanged between the parties. Discovery commenced on September 13, 1994 and was ordered to be completed by October 31, 1997. However, on December 4, 1997, following a series of warnings, (see R.R. at 1056a, 1058a, 1068a), a sanction order was issued against Williams for failing to comply with court discovery orders of December 4, 1995, September 6, 1996 and November 6, 1997.

the thirty-five m.p.h. speed limit for an urban area. (R.R. at 111a, 119a, 127a.) On cross-examination, Robson noted the timing sequence of the traffic signal and agreed that, even if the bus had entered the intersection as the light turned red, the traffic light for Decedent would have remained red for another one and eight tenths seconds. (R.R. at 150a–58a.) Appellants presented the testimony of Norman Marcus, an engineering consultant, who testified that the bus was travelling at a speed of thirty-four m.p.h. at the time of contact. (R.R. at 631a.) Marcus also opined that Cobb had acted properly with regard to SEPTA rules. (R.R. at 654a, 665a.)

Other witnesses, both medical and lay, testified regarding Decedent's consciousness prior to his death. To indicate that Decedent was conscious at some point after the accident, Williams testified that Decedent squeezed her hand when she asked him to use it as a signal that he heard her. She also stated that Decedent would open his eyes at various times and would respond when his throat tube was cleaned. In addition, on one occasion, he sat up in bed and looked as if he "wanted to come out of it." In fact, he smiled when the family visited him on Christmas day. (R.R. at 310a, 312a, 314a–15a.) Shakira Williams, Decedent's daughter, corroborated this testimony. (R.R. at 508a–09a.)

In addition to her own testimony and that of her daughter, Williams presented the testimony of Decedent's treating physician, Richard Greenberg, M.D., who also expressed the belief that Decedent had some level of awareness. Specifically, Dr. Greenberg testified that Decedent indicat-ed that he experienced pain, and, consequently, Decedent received pain medication. Dr. Greenberg also stated that there were times when Decedent would move on his own and exhibit a level of consciousness. (R.R. at 371a, 373a, 413a, 419a.) However, contrary to Dr. Greenberg, Appellants' medical expert, Elizabeth Genovese–Stone, M.D., testified that Decedent never regained consciousness from the time of the accident until his death twenty days later. (S.R.R. at 36, 50–51.)

On August 13, 1998, the jury rendered a verdict in which Appellants were adjudged sixty per cent negligent and decedent was adjudged forty per cent negligent. Damages were assessed by the jury as $1,367,000.00 on the survival action and $280,000.00 on the wrongful death action.[2] (R.R. at 943a–48a.) Williams filed a post-verdict petition for delay damages on August 18, 1998, and Appellants filed a motion for post-trial relief on August 21, 1998, seeking JNOV or, alternatively, a new trial. (R.R. at 950a–61a.) The trial court granted Appellants' request to amend their motion for post-trial relief to include further allegations of error, and Appellants filed the amended motion on October 23, 1988. (R.R. at R.R. at 962a–65a.) On December 17, 1998, following a hearing, the trial court denied Appellants' motion for post-trial relief and amended motion for post-trial relief, thereby denying them JNOV or a new trial. The trial court also granted Williams' petition for delay damages and entered judgment in favor of Williams and against Appellants (R.R. at 10a.) Appellants now appeal to this court.[3]

2. The trial court molded the jury's determination into a verdict for Williams of $168,000.00 in the wrongful death action and $820,200.00 in the survival action. Subsequently, the trial court reduced the survival action verdict to $250,000.00, representing the limit of SEPTA's liability under what is commonly called the Sovereign Immunity Act, 42 Pa.C.S. § 8528(b). With the addition of delay damages, Williams' final award totaled $676,-709.38. (R.R. at 9a, 1205a.)

3. Our scope of review of a decision of a trial court denying motions for JNOV or a new trial is limited to a determination of whether the trial court abused its discretion or committed an error of law controlling the outcome of the case. *Paxton Hollow Estates, Ltd. v. Lower Paxton Township*, 93 Pa.Cmwlth. 468, 501 A.2d 1175 (1985).

■ Appellants first argue that they should be granted a new trial because the trial court unduly restricted Appellants' voir dire examination by prohibiting Appellants' inquiry into the attitudes of prospective jurors regarding the transit strike involving SEPTA and the Transit Workers Union.[4] Appellants contend that, because unidentified jurors "grumbled" when SEPTA was identified as a party, Appellants should have been able to voir dire panel members regarding their feelings about the strike and its effect on them. In this way, Appellants could have ensured that no juror harbored any ill feelings against SEPTA which would impair his or her ability to render a fair decision. We disagree that the trial court abused its discretion when it disallowed the questions proposed by Appellants.

■ In *Commonwealth v. Karenbauer*, 552 Pa. 420, 438, 715 A.2d 1086, 1094 (1998), *cert. denied, sub nom. Karenbauer v. Pennsylvania*, —— U.S. ——, 119 S.Ct. 1258, 143 L.Ed.2d 354 (1999), our supreme court set forth the following standards for voir dire questions.

> The scope of voir dire rests in the sound discretion of the trial court, whose decision will not be reversed on appeal absent palpable error. *Commonwealth v. Proctor*, 526 Pa. 246, 257, 585 A.2d 454, 460 (1991). The purpose of voir dire is to ensure the empaneling of a competent, fair, impartial and unprejudiced jury. *Id.*; *Commonwealth v. England*, 474 Pa. 1, 6, 375 A.2d 1292, 1295 (1977). The scope of voir dire should therefore be limited to questions that attempt to disclose a potential juror's lack of qualification or fixed opinion regarding the defendant's guilt or innocence. *England*, 474 Pa. at 7, 375 A.2d at 1295. "A

prospective juror's personal views are of no moment absent a showing that these opinions are so deeply embedded as to render that person incapable of accepting and applying the law as given by the court." *Id.* at 8, 375 A.2d at 1296.

Here, in refusing to permit questioning of jurors regarding their attitude with respect to the transit strike, the trial court acted well within its discretion. Other than reference to the fact that some of the prospective jurors may have been inconvenienced by the strike, Appellants failed to demonstrate a nexus between the strike and the unidentified juror's "grumbling." Further, as the trial court pointed out, there were no special circumstances here to warrant inquiries into a juror's personal feelings about the transit strike. In fact, all of the jurors swore that they were capable of accepting and applying the law as instructed by the court, regardless of any preconceptions they might have had, and, absent some indication to the contrary, the trial court was entitled to assume that the jurors would not violate that oath. *Karenbauer*. Finally, the jury's verdict, finding Decedent forty per cent negligent, undercuts any charge of bias claimed by Appellants. For these reasons, Appellants' first argument must fail.

Next, Appellants argue that a new trial is warranted because the trial court erred in permitting Elizabeth Delgado to testify as a fact witness even though her statement was obtained after the close of discovery, and she was not identified in Williams' pre-trial memorandum. In addition, Appellants argue that the trial court erred in denying Appellants' motion in limine to preclude expert medical testimo-

---

**4.** Williams contends that Appellants have waived their right to object to the trial court's decision to prohibit voir dire concerning the transit strike because, prior to trial, Appellants did not *explicitly* challenge the trial court's striking of questions 11, 12 and 13, the questions relating to the strike. (R.R. at 60a.) We note, however, that although Appellants may not have voiced a specific objection to the striking of questions 11, 12 and 13, the wording of Appellants' challenge clearly implied that the objection extended to these questions. (R.R. at 60a–61a). We need not decide the waiver issue, however, because, as discussed, Appellants' argument does not succeed.

ny,[5] thereby permitting Dr. Greenberg to testify as a medical expert despite the fact that he was not identified until after the discovery deadlines established by the court.[6] The trial court permitted the challenged testimony based on its determination that the late identification of Delgado and Dr. Greenberg did not prejudice Appellants. However, Appellants contend that the record refutes the trial court's determination and that the testimony of these witnesses did prejudice Appellants. Consequently, Appellants assert that the trial court abused its discretion in allowing these witnesses to testify. Again, we must disagree.

▇▇▇ In deciding whether to allow the testimony of a witness not included in a pre-trial memorandum, the court must balance the facts and circumstances of each case to determine the prejudice to each party. *Feingold v. Southeastern Pennsylvania Transportation Authority*, 512 Pa. 567, 517 A.2d 1270 (1986).[7] Exclusion of expert witness testimony for failure to comply with discovery deadlines is largely within the discretion of the trial court. *Green Construction Co. v. Department of Transportation*, 164 Pa.Cmwlth. 566, 643 A.2d 1129 (1994), *appeal denied*, 543 Pa. 718, 672 A.2d 311 (1996). However, preclusion of such testimony is a drastic sanction that should not be applied unless the facts of the case make this measure absolutely necessary. *Id.*

▇▇▇ The facts here establish that SEPTA interviewed Delgado immediately after the December 6, 1993 accident and, thus, knew the substance of her testimony even before Williams filed this action. Further, Williams had informed Appellants that she intended to call every passenger as a witness. Moreover, Williams eventually obtained Delgado's written statement on July 25, 1998,[8] eleven days before trial, and

---

5. On December 1, 1997, Appellants filed a motion in limine to preclude Williams from introducing or referring to any expert medical testimony; the trial court denied this motion on August 4, 1998. (R.R. at 3a–6a, 11a, 47a.)

6. Appellants base their objection to Dr. Greenberg's expert testimony on Pennsylvania Rule of Civil Procedure No. 4003.5, which provides in relevant part:

 (b) An expert witness whose identity is not disclosed in compliance with subdivision (a)(1) of this rule shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

 Appellants contend that this rule is one of *mandatory* preclusion at trial of the testimony of undisclosed expert witnesses in the absence of extenuating circumstances. *See Kaminski v. Employers Mutual Casualty Co.*, 338 Pa.Super. 400, 487 A.2d 1340 (1985). *See also* Pa. R.C.P. No. 4019(i). Appellants maintain that, not only did Williams not have extenuating circumstances, but that she deceived both Appellants and the trial court with regard to Dr. Greenberg's testimony by implying that he would not be testifying as an expert. Although the language of Pa. R.C.P. No. 4003.5 appears to be mandatory, the case law has applied a different approach and balances the facts and circumstances of each case to determine the prejudice to each party. *See Curran v. Stradley, Ronon, Stevens & Young*, 361 Pa.Super. 17, 521 A.2d 451 (1987). Here, the trial court found that allowing Delgado and Dr. Greenberg to testify did not prejudice Appellants and, on that basis, denied Appellants' motion to preclude this testimony.

7. In *Feingold*, the court noted several factors to consider in determining whether to allow the testimony of a witness not included in a pre-trial memorandum, including: (1) bad faith on the part of the party seeking to call such witnesses; (2) the party's ability to have discovered the witness earlier; (3) the validity of the excuse offered; (4) the willfulness of the party in failing to comply with the court's order; and (5) the party's intent to mislead or confuse his adversary. *Feingold*. Further, basic considerations include: (1) the prejudice or surprise of the party against whom the witness would have testified; (2) the party's ability to cure that prejudice; (3) the extent to which the case would be disrupted by waiver of the rule against calling unlisted witnesses; and (4) the party's bad faith in failing to comply with the court's order. *Id.*

8. Appellants contend that, after SEPTA took Delgado's statement, SEPTA provided Williams with Delgado's phone number and address, so that Williams had no excuse for

faxed the statement to Appellants nine days prior to trial. However, during these nine days, Appellants never sought to depose Delgado nor requested a continuance for that purpose.

■ With regard to Dr. Greenberg's testimony, the trial court noted all the accommodations provided Appellants relative to the late expert witness identification; specifically, the trial court: (1) continued the case for four months to give Appellants time to respond to the expert report; (2) afforded Appellants the opportunity to obtain additional expert medical reports from their own witnesses; (3) afforded Appellants the opportunity to request Dr. Greenberg's deposition; and (4) tolled the running of delay damages during this continuance.

Under such circumstances, the trial court did not abuse its discretion in allowing Delgado and Dr. Greenberg to testify notwithstanding their late identification. *See Feingold* (holding that, despite noncompliance with the discovery rule, a witness should be permitted to testify where the opponent was not prejudiced because he had knowledge of the substance of the challenged testimony); *Green* (holding that where the identity and substance of expert testimony was disclosed five days before trial, allowing such testimony was not an abuse of discretion where the plaintiff failed to show that it was prejudiced by the dilatory disclosure); *Curran v. Stradley, Ronon, Stevens & Young,* 361 Pa.Super. 17, 521 A.2d 451 (1987) (holding that where the plaintiff was notified of the defense expert's identity nine days before trial, but failed to request a continuance or depose the witness prior to trial, this inaction mitigated any real prejudice caused by the untimely disclosure and rendered exclusion of the expert testimony unnecessary); *Kemp v. Qualls,* 326 Pa.Super. 319, 473 A.2d 1369 (1984) (holding that, where a party had thirteen days in which to investigate an expert's background, no real prejudice flowed from the untimely disclosure of the expert's testimony and qualifications).

■ Appellants also argue that the evidence produced at trial by Williams was insufficient to establish a prima facie case of negligence [9] and to support the verdict. Specifically, Appellants assert that Williams failed to prove that Cobb did not conform his conduct to a reasonable person standard and failed to prove that the 'act of speeding was the legal cause of the collision. To the contrary, Appellants contend that the record shows that Cobb acted reasonably by looking both ways before entering the intersection and, seeing nothing coming, proceeding into the intersection with his foot over the brake. Appellants maintain that, having done this, Cobb had no duty to continue looking to ascertain whether another motorist would disobey traffic rules and ignore a red light in an opposing direction. Appellants thus assert that the accident did not happen because of the speed of the bus; rather, it was Decedent's failure to stop at a steady red signal, in violation of section 3112 of the Vehicle Code, 75 Pa.C.S. § 3112, that

---

failing to identify Delgado as a witness in a timely fashion. However, Williams' counsel ° explained that, despite trying to find every witness on Appellants' list, Williams was unable to locate Delgado until this time. (R.R. at 54a–58a.) By denying Appellants' motion to preclude Delgado's testimony, the trial court indicated that it accepted Williams' version of events and impliedly found that Williams had a valid excuse for not identifying Delgado during discovery. Even if we would have reached a different conclusion, we may not substitute our opinion for that of the trial court.

9. A cause of action for negligence exists where there is an obligation on the part of the actor to conform to certain standards of conduct for the protection of others against foreseeable risks, a failure on the actor's part to conform his conduct to the standard required, and a reasonable close causal connection between the conduct and the resulting injury. *Macina v. McAdams,* 280 Pa.Super. 115, 421 A.2d 432 (1980).

was the sole legal cause of the collision. Accordingly, Appellants argue that they are entitled to JNOV. Once again, we disagree.

 JNOV is a drastic remedy because a court may not lightly ignore the findings of a duly-selected jury. *Neal By Neal v. Lu*, 365 Pa.Super. 464, 530 A.2d 103 (1987). In reviewing a motion for JNOV, the evidence must be considered in the light most favorable to the verdict winner, who must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his or her favor. Moreover, JNOV should only be entered in a clear case and all doubts should be resolved in favor of the verdict winner. JNOV is properly granted only where the movant is entitled to judgment as a matter of law or the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. *Boutte v. Seitchik*, 719 A.2d 319 (Pa.Super.1998).

 The record here contains widely differing testimony and opinions; however, when viewed in the light most favorable to Williams, the verdict winner, the record clearly supports the jury verdict. Several fact witnesses testified that the SEPTA bus was speeding when it entered the intersection, and at least one witness's testimony led to the reasonable inference that the light turned red as the bus entered the intersection. As the trial court stated, this evidence clearly established a violation of section 3361 of the Vehicle Code, 75 Pa. C.S. § 3361, relating to driving at a safe speed, and establishes Appellants' negligence per se. This evidence also was sufficient to warrant a finding that SEPTA's driver was sixty per cent negligent in causing the accident.[10] Therefore, Appellants cannot prevail with this argument.

Finally, Appellants contend that the trial court erred in refusing to give Appellants' requested jury instructions numbers thirty-three, fifty-six, sixty and sixty-one. The standards for the content of a jury charge were enunciated in *Santarlas v. Leaseway Motorcar Transport Co.*, 456 Pa.Super. 34, 689 A.2d 311, 312 (1997) (citations omitted) as follows:

A trial court is bound to charge only on that law for which there is factual support in the record. As a general rule, refusal to give a requested jury instruction containing a correct statement of the law relating to the issues raised by the evidence is grounds for a new trial unless the substance of that point has been covered in the court's charge as a whole. A jury charge must be examined in its entirety to determine if there was prejudicial error. Error will be found where the jury was misled or where

---

10. Appellants maintain that the trial court was incorrect in stating that *four* fact witnesses testified that the bus was speeding, pointing out that witness Irene Mercede testified, "He was going fast but not that fast." (R.R. at 269a.) Further, Appellants contend that the record refutes the trial court's statement that witnesses testified that the light was red prior to the bus entering the intersection. Appellants also assert that the trial court's determination that Cobb violated 75 Pa.C.S. § 3361 by traveling far in excess of the *posted speed limit* was error. Relying on 75 Pa.C.S. § 3362, Appellants maintain that the record contains no evidence that Cobb drove the bus in excess of the statutory limit where the speed limit was not posted.

Reviewing the record in the light most favorable to the verdict winner, we conclude that each of Appellants' arguments must fail. First, even discounting Mercede, there were a number of other witnesses who testified that Cobb was speeding. Second, Griffin's testimony that the traffic signal was yellow when the bus was in the middle of the block, reasonably leads to the conclusion that the light was red when Cobb entered the intersection. Finally, the record indicates that Cobb was aware that the speed limit was 20–25 m.p.h. and, even if that limit was not posted, the standard under section 3361, unlike section 3362, is not whether Cobb exceeded the *posted* speed limit. Rather, section 3361 requires driving at a speed that is safe and appropriate when approaching and crossing an intersection. Travelling at twice the known limit, as Cobb did, would not fit that description.

there was an omission which amounts to a fundamental error.

Furthermore, in *Commonwealth v. King*, 554 Pa. 331, 721 A.2d 763, 778–79 (1998) (citations omitted), our supreme court held that:

A trial court has broad discretion in phrasing its instructions to the jury and can choose its own wording so long as the law is clearly, adequately and accurately presented to the jury for consideration. Furthermore, a trial court need not accept counsel's wording for an instruction, as long as the instruction given correctly reflects the law. In reviewing a challenged jury instruction, an appellate court must consider the entire charge as a whole, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principle at issue.

With these standards in mind, we consider each of Appellants' challenges to the trial court's jury instructions.

First, in requested charge number thirty-three, regarding the standard of care under section 3112(a)(3)(i) of the Vehicle Code, 75 Pa.C.S. § 3112(a)(3)(i), Appellants requested that the jury be informed that this section requires a driver facing a steady red signal to stop and remain standing until the indication to proceed is shown. The instruction went on to inform the jury that, if it finds that Decedent violated this act, he must be found negligent as a matter of law, and plaintiff's right to recover depended on a determination of whether Decedent's negligence was a substantial factor in bringing about his injury.

 Appellants contend that there was evidence sufficient to support a charge on section 3112(a)(3)(i) because the record reveals that Decedent drove through a steady red signal into the path of the SEPTA bus. However, the trial court's striking of negligence instruction thirty-three is not reversible error because it did not prejudice Appellants with respect to

the outcome here. The trial court fully discussed the concept of contributory negligence and, throughout the trial, Appellants contended that Decedent was the negligent party because he went through a steady red light. In fact, this objection was rendered moot by the jury's determination that Decedent was forty per cent negligent for the accident.

 Next, Appellants contend that the trial court committed reversible error by refusing to provide requested charge number fifty-six, instructing the jury that damages in a wrongful death action do not include recovery for grief or mental anguish. We disagree.

 With regard to the wrongful death action, the trial court took great pains to enumerate exactly what items are recoverable as damages in a wrongful death action. (R.R. at 917a–20a.) Moreover, the trial court stated, "I ask you not to allow sympathy or emotion for the plaintiff's loss to affect your decision." (R.R. at 895a.) Further, the jury was instructed that "Under the wrongful death action – just look at the words wrongful death – plaintiff is entitled to recover against SEPTA for their carelessness in causing the death of [Decedent]." (R.R. at 916a.) We recognize that the court used language that differed from that suggested by Appellants; however, a court is free to phrase its jury instructions in words other than those proposed, so long as the words chosen clearly, adequately and accurately present the law to the jury. After reviewing the challenged jury instruction, we conclude that it fairly conveys the legal principle at issue. Because the substance of Appellants' requested charge was covered in the language chosen by the court, there was no need for a new trial.

 Finally, Appellants contend that they deserve a new trial because the trial court erred by refusing to give requested instructions sixty and sixty-one with respect to the survival action. These instructions stated:

60. Pain and suffering, to be compensable, must be conscious. An injured person who does not regain consciousness after an accident is not entitled to damages on the element of the survival action no matter how long he lingers before death.

61. Where there is no evidence that [D]ecedent was conscious at any time after the automobile accident, you may not award damages for his pain and suffering between the time of injury and the time of death.

Appellants contend that these instructions were appropriate because there was no evidence in the record to indicate that Decedent was conscious at any time after the accident. Indeed, Appellants point out that the trial court itself stated that Decedent never regained consciousness after the impact rendered him unconscious. (Trial ct. op. at 1.)

On the other hand, Williams contends that the trial court gave an adequate instruction, albeit in more neutral language, on the subject of pain and suffering by stating:

> Under the survival act the plaintiff is entitled to be awarded an amount that you believe will fairly and adequately compensate plaintiff for the mental, physical pain, suffering and inconvenience that [Decedent] endured from the moment of the injury until the time of his death.... One of the issues you must decide, members of the jury, is whether or not [Decedent] suffered any pain and suffering. And you will have to consider the testimony that you have heard during the trial. If you find that [Decedent] endured pain and suffering, you should award plaintiff a fair and reasonable amount as in your best judgment will compensate the estate for all the pain and suffering that you believe [Decedent] endured.

(R.R. at 919a–20a.) We agree that this instruction correctly reflects the law with regard to pain and suffering.

 Here, the jury was presented with testimony from Williams, Decedent's daughter and two medical experts. Briefly stated, the first three of these witnesses testified that Decedent could, and did, endure pain and suffering before he died, whereas the final witness opined that Decedent could not have experienced any pain or suffering between the time of the accident and his death. The trial court properly instructed the jury that it had the duty to consider this trial testimony and, based upon it, decide whether or not Decedent had any pain and suffering. The trial court then clearly instructed that the jury should award a reasonable amount of compensation only *if* it found that Decedent endured pain and suffering before he died. We believe that this instruction is an adequate reflection of the law and, in fact, is superior to the instruction requested by Appellants. Contrary to the implication in Appellants' suggested charge, the question for the jury with respect to Decedent's pain and suffering was not simply whether Decedent was conscious before he died. *See Nye v. Department of Transportation,* 331 Pa.Super. 209, 480 A.2d 318 (1984). Rather, the question was whether Decedent was conscious of pain, even though his condition may have rendered him incapable of communicating that suffering to others.

For all these reasons, we affirm.

### O R D E R

AND NOW, this 2nd day of December, 1999, the order of the Court of Common Pleas of Philadelphia County, dated December 17, 1998, is hereby affirmed.