**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| AMEENA BROWN and EVAN BRAGGS, Individually and as Co-Administrators of the Estate of A.B., deceased,<br><br>  Plaintiffs,<br><br>  v.<br><br>FISHER-PRICE, INC., and MATTEL, INC.,<br><br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. N20C-01-067 PAW |

Submitted: November 8, 2024
Decided: December 20, 2024


**MEMORANDUM OPINION AND ORDER**


*Upon Consideration of Defendants' Motion to Exclude the Expert Testimony regarding Conscious Pain and Suffering Pursuant to D.R.E. 702;*

**DENIED.**


Robert Leoni, Esq., of Shelsby & Leoni, PA, *Attorney for Plaintiffs.*

Jennifer C. Wasson, Esq., Carla M. Jones, Esq., and Ryan Kingshill, Esq., of Potter Anderson & Corroon LLP, *Attorneys for Defendants.*


**WINSTON, J.**

# I. INTRODUCTION[1]

Defendants move to exclude the expert testimony of two doctors, Dr. Darlene Calhoun and Dr. Wayne Ross, regarding their testimony as to the conscious pain and suffering of A.B. before his death.[2] Defendants assert both doctors intend to testify as to conscious pain and suffering without a sufficient scientific basis to support such testimony.[3] The admissibility of the doctors' testimony regarding conscious pain and suffering is discussed below.

# II. STANDARD OF REVIEW

Delaware Rule of Evidence ("D.R.E.") 702 governs the admission of expert testimony. Under D.R.E. 702, expert opinion testimony is admissible provided that the witness "is qualified as an expert by knowledge, skill, experience, training, or education" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of the fact to understand the evidence or to determine a fact in issue;

---

[1] This Memorandum Opinion and Order references the factual and procedural background outlined in the Court's Memorandum Opinion and Order upon Consideration of Defendants' Motion for Summary Judgment, which the Court incorporates by reference. Unless otherwise noted, defined terms are ascribed the same meaning as in the Court's Summary Judgment Memorandum Opinion.

[2] Defs.' Mot. to Exclude Test. Regarding Conscious Pain and Suffering, D.I. 166. Defendants have separately moved for the exclusion of the entirety of Calhoun's and Ross's testimony, which the Court addresses in its separate Memorandum Opinions and Orders. *See* Defs.' Mot. to Exclude Pls.' Expert Darlene Vasbinder-Calhoun, D.O., D.I. 179; Defs.' Mot. to Exclude Pls.' Expert Wayne Ross, M.D., D.I. 174.

[3] *Id.*

(b)  the testimony is based on sufficient facts or data;
(c)  the testimony is the product of reliable principles and methods; and
(d)  the expert has applied the principles and methods to the facts of the case.[4]

The burden falls on the party seeking to admit the expert testimony to show, by a preponderance of the evidence, its admissibility under D.R.E. 702.[5]  "Once expert testimony is challenged, the reviewing court must ensure that the proffered testimony is both relevant and reliable."[6]  To fulfill this duty, this Court acts as gatekeeper, determining if "the reasoning or methodology underlying the testimony is scientifically valid and … whether that reasoning or methodology properly can be applied to the facts in issue."[7]  In making that determination, the Court applies a five-step test that examines whether:

> (1) the witness is qualified as an expert by knowledge, skill, experience, training[,] or education; (2) the evidence is relevant [and reliable]; (3) the expert's opinion is based upon information reasonably relied upon by experts in the particular field; (4) the expert will assist the trier of fact to understand the evidence or to determine a fact in issue; and

---

[4] D.R.E. 702.

[5] *Bowen v. E.I. DuPont de Nemours & Co., Inc.*, 906 A.2d 787, 795 (Del. 2006).

[6] *Scottoline v. Women First, LLC*, 2023 WL 2325701, at *3 (Del. Super. Mar. 1, 2023) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)).

[7] *Gen. Motors Corp. v. Grenier*, 981 A.2d 531, 536 (Del. 2009) (internal quotations omitted) (quoting *Daubert*, 509 U.S. 579, at 592-93).

(5) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[8]

For scientific evidence to be deemed reliable, the testimony must be rooted in science and derived from the scientific method.[9]  Expert testimony is relevant when it assists the trier of fact to understand the evidence or determining a fact in issue. Thus, the core of a *Daubert* analysis is the "principles and methodology" used in formulating an expert's testimony, not on the expert's resultant conclusions.[10]  This Court possesses "broad latitude to determine whether any or all of the *Daubert* factors are reasonable measures of reliability in a particular case."[11]  "A strong preference exists for admitting evidence that may assist the trier of fact."[12]

## III.  ANALYSIS

From the outset, both experts offer testimony on a relevant issue.  Whether A.B. experienced conscious pain and suffering likely influences the potential award of damages in this case.  There appears to be two separate issues the doctors opine on: (1) whether A.B. experienced conscious pain and suffering; and (2) how long

---

[8] *Norman v. All About Women, P.A.*, 193 A.3d 726, 729-30 (quoting *Smith v. Grief*, 2015 WL 128004 (Del. Jan. 8, 2015)).

[9] *Daubert*, 509 U.S. at 590-94.

[10] *Bowen*, 906 A.2d at 794 (citing *Daubert*, 509 U.S. at 595).

[11] *Grenier*, 981 A.2d at 536 (internal quotations omitted) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)).

[12] *Norman*, 193 A.3d at 730.

that conscious pain and suffering lasted. Both issues are relevant to a material issue in this case—the extent of A.B.'s conscious pain and suffering.

## A. CALHOUN ONLY OPINES ON THE POTENTIAL DURATION OF A.B.'S PAIN AND SUFFERING.

Defendants posit Calhoun offers irrelevant testimony because Calhoun never considered whether A.B. was actually conscious before he died.[13] Plaintiffs argue Calhoun's report clearly determined A.B. would have been awake because Calhoun detailed how A.B. would have struggled for air.[14] Plaintiffs further note Pennsylvania law does not require a decedent to be awake, but rather the decedent must be "conscious of pain."[15]

Pennsylvania law does not allow for recovery based on pain and suffering if "the decedent is not conscious between the time of injury and the time of death."[16] The jury must determine "whether [the d]ecedent was conscious of pain, even though his condition may have rendered him incapable of communicating that suffering to others."[17] Plaintiffs contend this language means the jury could find

---

[13] D.I. 166 at 12.

[14] Pls.' Opp'n to Defs.' Mot. to Exclude Test. Regarding Conscious Pain and Suffering, D.I. 207 at 12 (Mar. 1, 2024).

[15] *Id*. (quoting *Williams v. Se. Pa. Transp. Authority*, 741 A.2d 848, 859 (Pa. Commw. Ct. 1999).

[16] *Nye v. Com., Dep't of Transp.*, 480 A.2d 318, 321 (Pa. Super. 1984).

[17] *Williams*, 741 A.2d at 859.

A.B. suffered even if A.B. never awoke.[18] In *Nye*, the court held "where the decedent is unconscious for the entire period between the time of injury and the time of death, there can be no recovery for pain and suffering in a survival action."[19] That statement does not suggest someone can experience pain and suffering without being awake, as Plaintiff suggests. Further, in *Williams*, the court held that jury instructions for damages were proper because both medical and lay testimony indicated that decedent had some level of awareness and consciousness prior to his death.[20] Accordingly, testimony regarding pain and suffering should only be admitted where the decedent awoke and had some level of awareness before his death.

A review of Calhoun's report shows she never explicitly determines A.B. would have awoken once his breathing became restricted.[21] Her report includes a breakdown of symptoms associated with asphyxiation, the potential duration of those symptoms, and an opinion that "while babies experience pain in the same way

---

[18] D.I. 207 at 12.

[19] *Nye*, 480 A.2d 318.

[20] *Williams*, 741 A.2d at 859.

[21] D.I. 207 Pls.' Ex. C ("Dr. Calhoun's Report").

6

as adults, they are noted to be far more sensitive to it."[22]  Calhoun notes how A.B. likely struggled to reposition himself and would have been gasping for air.[23]

Calhoun's decision not to opine on whether A.B. awoke does not render her testimony on the potential length of A.B.'s pain and suffering irrelevant.  Calhoun's depiction of the symptoms of asphyxia, as well as the potential duration of those symptoms, provides the jury with needed context to determine the extent of A.B.'s potential pain and suffering, if Plaintiffs can show that A.B. woke before his death.

Absent some showing that A.B. woke up, however, Calhoun's testimony may become irrelevant at trial.  Accordingly, the Court will not exclude Calhoun's testimony at this juncture solely based on her failing to opine on A.B.'s consciousness.  The Court may need to revisit the admissibility of Calhoun's pain and suffering testimony if Plaintiffs cannot otherwise establish A.B. was awake before his death.

### B.  CALHOUN'S TESTIMONY REGARDING PAIN AND SUFFERING IS OTHERWISE ADMISSIBLE.

Defendants argue Calhoun's testimony on pain and suffering must be excluded because Calhoun cites an unreliable case study, the Poets case study.[24]  Defendants further assert none of the other authorities cited by Calhoun went

---

[22] *Id*. at 29.

[23] *Id*.

[24] D.I. 166 at 16.

through peer review.[25]  Defendants contend reliance on peer-reviewed studies "is necessary under Daubert."[26]  Notably, Defendants do not object to Calhoun's methodology.

Calhoun devotes about a paragraph of her report to the findings of the Poets case study.[27]  That case study went through peer review.[28]  Whether a study has been subjected to peer review factors into the Court's analysis of the reliability of the study.[29]  Peer review, however, stands as one part of a "flexible inquiry" that also considers whether the theory in question has been tested, any potential error rate associated with the study, standards controlling the study, and whether the underlying reasoning or methodology has attracted widespread acceptance within the relevant scientific community.[30]  A study's lack of peer review does not necessarily render it unreliable.  Similarly, a peer-reviewed study does not necessarily qualify as reliable simply because it underwent peer review.

---

[25] D.I. 166 at 16.

[26] *Id.*

[27] Dr. Calhoun's Report at 28.

[28] D.I. 207 Pls.' Ex. M at 16.

[29] *Daubert*, 509 U.S. at 580.

[30] *Id.*

The Poets case study examined nine infants who died unexpectedly while connected to a cardiorespiratory monitor.[31]  It did not examine infants dying from suffocation, and it did not determine whether the infants were awake before they died.[32]  The Poets case study measured "evidence that autoresuscitative methods such as gasping occur before these deaths" and "how quickly … the heart rate fall[s]."[33]  In Calhoun's Report, she refers to the Poets case study only to discuss how infants struggling to breathe gasp for air, how long those gasps could last, and the corresponding effect on the infant's heart rate.[34]  That data informed Calhoun's determination of how long A.B. potentially experienced pain and suffering.

Defendants contend there are too many differences between the circumstances Poets evaluated and the facts of this case.[35]  Defendants' concerns, including the study's small sample size, speak to the credibility of Calhoun's conclusions drawn from the Poets case study, but not the admissibility of those conclusions.  Credibility is challenged in cross-examination.  Accordingly, as Defendants do not challenge the rest of Calhoun's pain and suffering methodology, the Court finds Calhoun's testimony admissible.

---

[31] D.I. 207 Pls.' Ex. M at 15.

[32] *Id*.

[33] *Id*.

[34] Dr. Calhoun's Report at 28.

[35] D.I. 166 at 15.

**C. ROSS'S OPINIONS ON CONSCIOUS PAIN AND SUFFERING ARE ADMISSIBLE.**[36]

Unlike Calhoun, Ross explicitly concluded "[t]he transition to respiratory failure would only serve to agitate the infant such that, even if he were asleep originally, he would awaken to struggle and attempt to breathe."[37] Defendants argue Ross lacks any scientific support for that opinion, reducing his conclusion to mere speculation.[38] Defendants liken Ross to the excluded expert in *Jones v. Astrazeneca, LP*[39] who "declined to walk through [his] methods, and instead repeatedly intoned that [he] had reviewed all of the information [he] was supplied, applied [his] training and experience, and put it all together."[40] Defendants lodge a similar challenge to Ross's conclusion that A.B. likely "experienced 60 to 90 seconds of pain and suffering before losing consciousness."[41]

---

[36] Plaintiffs appear to argue that because other courts have admitted Ross's testimony, this Court should follow that lead. D.I. 207 at 20-22. The decision to admit Ross's expert testimony in other cases has no utility here, as those cases concern different testimony offered by Ross which offers distinct opinions from those in the present case.

[37] D.I. 207 Pls.' Ex. A at 5 ("Dr. Ross's Report").

[38] D.I. 166 at 19.

[39] *Jones v. Astrazeneca, LP*, 2010 WL 1267114 at *9 (Del. Super. Mar. 31, 2010).

[40] *Id.* at 20-21 (internal quotations omitted) (quoting *Astrazeneca*, 2010 WL 1267114 at *9).

[41] D.I. 166 at 21.

10

*Daubert* requires this Court to "examine whether the reasoning or methodology underlying the testimony is scientifically valid."[42] "But conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data."[43] This Court must determine if "there is simply too great an analytical gap between the data" and Ross's opinion.[44]

The Delaware Supreme Court in *Norman v. All About Women, P.A*[45] ruled a doctor's training and experience formed a sufficient basis to admit his opinion, noting that "[m]edical literature or peer reviewed publications may be useful factors in an appropriate case, and may be relevant to the defense in this case, but they have no bearing on the admissibility of [the doctor's] opinions."[46] Ross applied his training and experience to the facts of this case. Ross based his opinion on his own expertise, and that expertise forms a sufficiently reliable scientific basis to justify the admission of his opinion.

Defendants further contend that the circumstances here mirror those that led to the exclusion of expert testimony in *Astrazeneca*. However, in *Astrazeneca*, the

---

[42] *Astrazeneca*, 2010 WL 1267114 at *9 (quoting *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004)).

[43] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

[44] *Id*.

[45] 193 A.3d 726 (2018).

[46] *Id*.

11

expert refused to explain her methodology and did not conduct a differential diagnosis.[47] Here, Ross conducted a differential diagnosis and explained during his deposition how he determined A.B. consciously suffered at some point before his death.[48] Ross justifies his conclusion regarding how long A.B. consciously suffered by citing to several medical texts and relying on Ross's own training and experience.[49] Although Defendants argue those medical texts are factually distinguishable from the facts of this case, such a distinction goes to credibility, not admissibility.

Defendants' contention that Ross possesses no scientific basis for his findings appears to be more of a challenge to the credibility of Ross's methodology. Ross's willingness to explain his methodology distinguishes his report from that of the expert report excluded in *Astrazeneca*. Defendants' true issue with Ross's testimony appears to be focused on his ultimate conclusions, rather than the approach he took

---

[47] *Astrazeneca*, 2010 WL 1267114 at *9.

[48] D.I. 207 Pls.' Ex. N at 538-49 (explaining how Ross examined a slide containing Purkinje cells to determine consciousness); *id*. at 550 (noting the autopsy described the brain structure as intact); *id*. at 595-99 (explaining in detail how Ross arrived at his conclusion, classifying the science that supported his findings as "basic knowledge").

[49] D.I. 166 at 24; *see Norman*, 193 A.3d at 731 (holding a doctor can rely upon applying their training and experience to the facts of a case, including evidence that would otherwise be inadmissible).

12

to reach those conclusions. The validity of an expert's conclusions remains a question for the jury provided the expert utilized a reliable methodology.[50]

## IV. <u>CONCLUSION</u>

Ross utilized a reasonable methodology to determine A.B. likely experienced conscious pain and suffering. Accordingly, Ross is permitted to testify. Ross's conclusions do not represent an analytical leap that is too far removed from the data available to Ross. Further, because Ross provides some evidence that A.B. consciously suffered, Calhoun's failure to do so does not invalidate Plaintiffs' claim for conscious pain and suffering. Calhoun's testimony is therefore relevant, as her testimony goes to the length of time A.B. consciously experienced pain and suffering.

---

[50] *In re Asbestos Litigation*, 911 A.2d 1176, 1207 (Del. Super. 2006).

"A strong preference exists for admitting evidence that may assist the trier of fact."[51] "The Court must be satisfied that cross-examination can be vigorous."[52] The Court is satisfied that any challenges of credibility and reliability of the data relied upon can be addressed during cross-examination. Thus, the Court will permit both Ross and Calhoun to testify as to conscious pain and suffering.

**IT IS SO ORDERED.**

*/s/ Patricia A. Winston*
**Patricia A. Winston, Judge**

---

[51] *Norman*, 193 A.3d at 730.

[52] *Astrazeneca*, 2010 WL 12167114 at *9.

14