813 A.2d 778

**David and Kristi GERROW, husband and wife, Appellees,**

v.

**JOHN ROYLE & SONS, and Shincor Silicones, Inc., Appellants.**

**Appeal of Shincor Silicones, Inc.**

Supreme Court of Pennsylvania.

Argued Oct. 16, 2001.

Decided Dec. 31, 2002.

Jay Richard Levenberg, Jenkintown, for PA Trial Lawyers Association.

Anne Manero, John F. Kent, Philadelphia, for Shincor Silicones, Inc.

Thomas L. Gowen, Norristown, for David and Kristi Gerrow.

Louis Rieffel, Doylestown, for John Royle & Sons.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Chief Justice ZAPPALA.

This case involves the interplay of the coordinate jurisdiction rule and Pennsylvania Rule of Civil Procedure 1035.3 (response to motion for summary judgment).

This is a products liability case in which Appellees sought damages for serious personal injuries suffered by Appellee, David Gerrow, when molten silicone rubber exploded from an extruder manufactured by Appellants. The accident was al-

legedly due to the defective design of the extruder which allowed the rubber to clog the machine, causing the explosion.

The action was commenced by the filing of a complaint on April 10, 1997, in the Philadelphia County Court of Common Pleas. A case management order was issued by Judge O'Keefe on July 24, 1997, setting December 7, 1998, as the deadline for submission of the expert reports of the Gerrows. On November 23, 1998, all parties joined in a motion to extend the discovery deadline, but the motion was denied by Judge O'Keefe. The parties nevertheless continued discovery after the December 7 cutoff date.

The case management order issued by Judge O'Keefe had an additional deadline, setting January 4, 1999, as the final date for filing pretrial motions. Though Appellant Shincor was amenable to continuing discovery beyond the deadline of December 7 and had joined the unsuccessful motion to extend the deadline, Shincor was mindful of the January 4 pretrial motion deadline. To protect its position, Shincor filed a motion for summary judgment on December 31, 1998. The motion was based on the Gerrows' failure to submit expert reports within the time allotted by the case management order, without which the Gerrows could not establish a *prima facie* case due to the technical nature of their negligence claim. Shincor reasoned that, if the trial court later refused to permit untimely filing of expert reports, the court might also refuse to permit untimely filing of pretrial motions, so the motion for summary judgment had to be filed before the January 4 deadline even though Shincor had no objection to the Gerrows continuing their efforts to obtain expert reports.

The Gerrows filed a timely response[1] to the motion for summary judgment. With it they filed several expert reports which were allegedly sufficient to make out a *prima facie* case against Appellants.

The motion for summary judgment was assigned to Judge Abramson. He decided that the rule of coordinate jurisdiction

1. Contrast this with the untimely response in *Wolloch v. Aiken,* 572 Pa. 335, 815 A.2d 594 (2002).

precluded him from extending the discovery deadline established by Judge O'Keefe in the case management order, and that the Gerrows' attachment of expert reports to their response to the motion for summary judgment was an impermissible attempt to circumvent the deadline. He therefore granted the motion.

The Superior Court reversed. It found fault with both conclusions of the trial court: it held that the expert reports appended to the response to the motion were a permissible supplementation of the record pursuant to Pa.R.C.P. 1035.3(b); it also held that the coordinate jurisdiction rule, under these circumstances, did not preclude Judge Abramson from revisiting the case management deadlines established by Judge O'Keefe.

This Court granted allocatur and requested the parties to address two issues: (1) whether Rule 1035.3(b) of the Rules of Civil Procedure allows a party to supplement the record with additional evidence, rather than limiting such evidence merely to that intended to supplement evidence already of record; and (2) whether the coordinate jurisdiction rule precludes the trial court's consideration of an expert report, appended to the answer to a motion for summary judgment, that was not filed before the deadline for discovery set by a different judge in the case management order.

Rule 1035.3 (response to motion for summary judgment) states: "(b) An adverse party may supplement the record or set forth the reasons why the party cannot present evidence essential to justify opposition to the motion and any action proposed to be taken by the party to present such evidence." Pa.R.C.P. 1035.3(b). Both the timing and the scope of the supplementation are at issue. The Superior Court interpreted the rule broadly. We hold that the rule, read *in pari materia* with Rule 1035.2 (motion for summary judgment) and the Note and Explanatory Comment, does permit the supplementation which was attempted by Appellees.

Rule 1035.2 reads:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense *which could be established by additional discovery or expert report,* or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

(emphasis added). *The Explanatory Comment*—1996 includes the following guidance for applying the Rule:

Special note should be taken of the requirement under Rule 1035.2(2) that the motion be made after completion of discovery relevant to the motion, including the production of expert reports. While Rule 1035.2(2) is prefaced with the statement that any party may file a motion after the relevant pleadings have closed, the adverse party must be given adequate time to develop the case and the motion will be premature if filed before the adverse party has completed discovery relevant to the motion. *The purpose of the rule is to eliminate cases prior to trial where a party cannot make out a claim* or defense after relevant discovery has been completed; *the intent is not to eliminate meritorious claims prematurely before relevant discovery has been completed.*

The timing of the motion is important.... Under Rule 1035.2(2), the motion is brought "after the completion of discovery relevant to the motion."

New Rule 1035.2 provides that a party may move for summary judgment after the "relevant" pleadings are closed and, in order to provide discretion in the lower court, within such time so as not to "unreasonably" delay the trial.

(emphasis added). Since the intent of the motion for summary judgment is not to eliminate meritorious claims that could be established by additional discovery or expert report, it is consistent with that intent to permit supplementation of the record under Rule 1035.3(b) to allow the record to be enlarged by the addition of such expert reports. We regard this as being squarely within the scope of the supplementation permitted by Rule 1035.3(b) in response to a motion for summary judgment.

Inasmuch as the expert reports were properly filed with the Rule 1035.3(b) response, the effect of the coordinate jurisdiction rule comes into question.[2] Under the facts of this case, did the coordinate jurisdiction rule preclude Judge Abramson from considering the reports because they were filed after the case management deadline established by Judge O'Keefe. As stated above, Judge Abramson believed his hands were tied by the coordinate jurisdiction rule. The Superior Court did not and reversed the trial court.

The Superior Court was correct in this determination as well.

■ We recently discussed the coordinate jurisdiction rule and its purposes in *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326 (1995). *Starr* states the rule as follows: "[J]udges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions." *Id.* at 1331. "Departure ... is allowed only in exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed." *Id.* at 1332. The rule serves "not only to promote the goal of judicial economy" but also: "(1) to protect the settled expectations of the parties; (2) to ensure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of

**2.** See *Ryan v. Berman,* 572 Pa. 156, 813 A.2d 792 (Pa.2002), for additional discussion and application of the coordinate jurisdiction rule.

justice; and (5) to bring litigation to an end." *Id.* at 1331. It is manifest that a judge may not lightly overrule the prior decision of another judge of the same court.

In some circumstances, however, application of the rule can "thwart the very purpose the rule was intended to serve, *i.e.*, that judicial economy and efficiency be maintained." *Salerno v. Philadelphia Newspapers, Inc.*, 377 Pa.Super. 83, 546 A.2d 1168, 1170 (1988). Thus we said in *Starr* that departure from the rule of coordinate jurisdiction is allowed "where the prior holding was clearly erroneous and would create a manifest injustice if followed." 664 A.2d at 1332. Moreover, the rule does not apply where two motions differ in kind, then a second judge is not precluded from granting relief though another judge has denied an earlier motion. *Goldey v. Trustees of University of Pennsylvania*, 544 Pa. 150, 675 A.2d 264, 267 (1996). The rule does not apply when distinct procedural postures present different considerations, then a substituted judge may correct mistakes made by another judge at an earlier stage of the trial process, or, perhaps more accurately, may revisit provisional rulings made earlier in the litigation. *Riccio v. American Republic Ins. Co.*, 550 Pa. 254, 705 A.2d 422 (1997).

In this case, the coordinate jurisdiction rule did not apply for two reasons. To begin with, it appears erroneous in the first instance for Judge O'Keefe to deny the November 23, 1998 motion to extend the discovery deadline. The motion was joined by all parties. It was based on the necessity of extensive traveling to depose witnesses in several states, as well as a financial crisis faced by one corporate defendant. All parties were aware of these difficulties and believed they justified extension of the discovery timetable. Judge O'Keefe did not permit hearing, argument, or conference on the motion and, in summarily denying it, gave no rationale for the denial. There is thus no basis for this Court to review his discretion in denying the motion. What appears to be an unreasonable decision has no explanation in the record, and the decision appears to be unjust. It would have been perfectly proper for

Judge Abramson to reexamine the discovery timetable in order to correct that error. That would have served the ends of judicial economy and might have corrected a manifest injustice.

Secondly, under the rationale of *Riccio,* the coordinate jurisdiction rule did not apply to Judge Abramson. Judge Abramson was not presented with the same question as Judge O'Keefe had been. Judge O'Keefe had been presented with a scheduling issue affecting case management and the court's timetable. Judge Abramson, by contrast, was faced with the ultimate question of whether summary judgment should be granted, ending the litigation entirely. The considerations were entirely different, so the coordinate jurisdiction rule did not apply in the sense of precluding an examination of Appellees' expert reports to determine whether they established a *prima facie* case, making summary judgment inappropriate.[3]

For these reasons, we conclude that Judge Abramson erred in applying the coordinate jurisdiction rule and entering summary judgment, and therefore affirm the Superior Court order, which reversed the trial court's entry of summary judgment.

The order of the Superior Court is affirmed.

Former Chief Justice FLAHERTY did not participate in the decision of this case.

Justice SAYLOR files a concurring opinion.

Justice CAPPY files a concurring and dissenting opinion in which Justice CASTILLE and Justice NEWMAN join.

Justice NIGRO files a dissenting opinion.

---

**3.** Pa.R.C.P. 1035.3(c) makes it clear that the trial judge, reviewing the nonmoving party's response to a motion for summary judgment, possesses a wide range of discretion. Subsection (c) states: "The court may rule upon the motion for judgment or permit affidavits to be obtained, depositions to be taken or other discovery to be had or make such other order as is just." Our holding is that the trial court was not precluded *by the rule of coordinate jurisdiction* from examining the supplemental reports submitted with Appellees' response to the motion for summary judgment. Under Rule 1035.3(c), the trial court has broad discretion in regulating discovery.

Justice SAYLOR, concurring.

Although I agree with the majority's decision to remand, I am sympathetic to the circumstances of the Philadelphia trial courts, which, as exemplified by this case, have implemented and enforced discovery deadlines as an essential means for controlling their overcrowded dockets. Here, a case management order embodied the relevant schedule and, pursuant to the local administrative rule, an extension was permitted only upon petition for extraordinary relief. *See* Philadelphia Court of Common Pleas Reg. No. 95–2 (providing the procedure for obtaining relief and precluding the parties from extending the deadlines in a case management order by agreement). Further, the Philadelphia Court of Common Pleas has issued an administrative order outlining the protocol for production of expert reports in civil cases and stating that "[t]he dates set forth in the Case Management Order are deadlines after which, in the absence of extraordinary circumstances, no new expert reports or theories can be identified," and further noting that "[c]ounsel may consider filing summary judgment motions where no critical expert opinion has been provided." Admin. Doc. No. 3 of 1998, *reprinted in* 28 Pa. Bull. 2919.

While the actions of the trial court therefore comport with the local procedure as written, rigid adherence to such procedure in these circumstances is in tension with the present, applicable rules of civil procedure and prevailing decisional law. In particular, while the trial courts are authorized to preclude evidence as a sanction for violation of an order of court respecting discovery, such a preclusionary order presently is permissible only "on motion." Pa.R.C.P. No. 4019(a)(1).[1] Further, such a motion implicates the trial court's discretion, guided by standards established by this Court, which include the requirement to make an assessment for prejudice. *See, e.g., Pioneer Commercial Funding Corp. v.*

---

1. The procedure established under the corresponding Federal Rule of Civil Procedure is materially different, in that the federal rules expressly permit a district court to enter an order imposing sanctions where a party fails to comply with a case management time limit, including an order prohibiting the introduction of designated matters into evidence. *See* Fed.R.Civ.P. 37(b)(2).

*American Fin. Mortgage Corp.*, 797 A.2d 269, 287 (Pa.Super.2002); *accord Miller v. Brass Rail Tavern, Inc.*, 541 Pa. 474, 488 n. 5, 664 A.2d 525, 532 n. 5 (1995) (citing *Feingold v. SEPTA*, 512 Pa. 567, 573, 517 A.2d 1270, 1273 (1986)).[2] In the absence of an order imposing preclusive sanctions, Civil Procedural Rule 1035.3(b) grants the non-moving party thirty days to supplement the record in response to a summary judgment motion. As the majority notes, Appellants' supplementary reports were filed within the allotted time.

As local rules of procedure must be consistent with the Rules of Civil Procedure, *see Brogan v. Holmes Elec. Protective Co. of Phila.*, 501 Pa. 234, 239, 460 A.2d 1093, 1095 (1983) (citing 42 Pa.C.S. § 3230), it is apparent that effective enforcement of Philadelphia's case management scheme can presently be accomplished in individual cases primarily via filing of a Rule 4019 motion by a party, or a determination by the trial judge under Rule 212.2(c), *see supra* note 2. I am therefore obliged to agree with the majority that, in absence of such a motion or determination, Appellees should not have been precluded from submitting their expert reports in response to the summary judgment motion.[3]

**2.** Preclusionary sanctions are also available under the rules for failure to submit an expert witness report as a component of a pre-trial statement. *See* Pa.R.C.P. No. 212.2(a)(5), (c). Again, however, an assessment of prejudice is an express prerequisite to preclusion on such terms. *See* Pa.R.C.P. No. 212.2(c).

**3.** I agree in many respects with points made in Mr. Justice Nigro's dissent, but do not believe, respectfully, that I am "putting the cart before the horse," as he suggests, *see* Dissenting Opinion, at 789 n. 7. I have merely recognized that the present rules contemplate a separate motion serving as the procedural vehicle to implicate the necessary determination of prejudice as a prerequisite to the imposition of preclusive sanctions prior to trial. *See, e.g., Williams v. SEPTA*, 741 A.2d 848, 855–56 & nn. 5–6 (Pa.Cmwlth.1999) (addressing a motion to preclude expert testimony and applying a prejudice standard), *appeal denied*, 563 Pa. 680, 759 A.2d 925 (2000). Such framework manifests no facial incongruity, since the factual predicate for preclusion is the failure to obey an order of court regarding discovery, *see* Pa.R.C.P. No. 4019(a)(1)(viii), not the particular substance of a disclosed, undisclosed, or yet-to-be-prepared expert report. Moreover, Rules 4003.5(b) and 4019(i) do not in and of themselves control, since those provisions do not address the specific timing of pre-trial disclosure, but rather, concern only the necessity of making a requested disclosure of identity

Justice CAPPY, concurring and dissenting.

I agree with the majority that under Pa.R.Civ.P. 1035.3(b), Appellees were allowed to supplement the record by appending expert reports to their response to Appellant's motion for summary judgment, and that the coordinate jurisdiction rule was not relevant to Judge Abramson's decision on summary judgment. However, I believe that the majority's interpretation of Pa.R.C.P. 1035.3(b) and its application to the facts in this case are incorrect insofar as they fail to give effect to the terms of Pa.R.C.P. 1035.3(c). Moreover, I believe that the majority's present analysis of the coordinate jurisdiction rule does not comport with the analysis this Court has previously set forth and followed.

This appeal requires us to construe a Rule of Civil Procedure. The Rules themselves provide several principles of construction. First and foremost, is the principle that the object of all interpretation and construction of the Rules is to ascertain and effectuate this Court's intention. Pa.R.C.P. 127(a). Another principle is that every Rule is to be construed, if possible, to give effect to all of its provisions. Pa.R.C.P. 127(b). A third principle is that when the words of a Rule are not explicit, the court's intention may be ascertained by considering, among other matters, the object to be attained by the Rule's promulgation and the consequences of a particular interpretation. Pa.R.C.P. 127(c).

With these principles in mind, and turning to the Rule at hand, I note that subsection (b) of Pa.C.P. 1035.3, which states that a party who opposes a summary judgment motion may

on a pre-trial basis. Additionally, as noted, both have been read to incorporate a prejudice requirement, *see, e.g., Feingold,* 512 Pa. at 573, 517 A.2d at 1273; *Williams,* 741 A.2d at 855–56 & nn. 5–6, which Justice Nigro acknowledges as precedent contrary to his position. Thus, while my thoughts align in a number of material regards with Justice Nigro's, I believe that the better approach to substantial amendments to the rules is to invoke the orderly process of rulemaking, with the concomitant notice to and opportunity for review and comment by the involved interests. In this regard, the First Judicial District may wish to raise with the Civil Procedural Rules Committee the question of whether the rules should be amended to implement an "extraordinary circumstances" standard for allowing late submission of expert reports.

supplement the record, is followed by subsection (c) of Pa. R.C.P. 1035.3, which provides that: "The court may rule upon the motion for judgment or permit affidavits to be obtained, depositions to be taken or other discovery to be had or make such other order as is just." Pa.R.Civ.P. 1035.3(c). Clearly, Rule 1035.3(c) offers the trial court certain discretionary latitude when dealing with these matters.

When I read and apply these subsections of Pa.R.C.P. 1035.3 together, I conclude that after Appellees filed their response to Appellant's motion for summary judgment, in which they supplemented the record with expert reports under Pa.R.C.P. 1035.3(b), Judge Abramson should have considered his options under Pa.R.C.P. 1035.3(c). In my view, pursuant to the authority that Pa.R.C.P. 1035.3(c) gives to the trial courts to "make such other order as is just", Judge Abramson could have considered whether he would allow the expert reports to have any bearing on his decision to grant or deny Appellant's motion for summary judgment. In arriving at this determination, among the facts that Judge Abramson would have had before him was that the reports were secured in violation of Judge O'Keefe's case management order and Judge O'Keefe's decision to deny an extension of the discovery deadline.[1]

Moreover, given the aims of Pa.R.C.P. 1035.3(b) and (c), and the consequences of the majority's interpretation, I am persuaded that this sequence of procedure reflects this Court's intention. Both Pa.R.C.P. 1035.3(b) and (c) insure that the party who opposes a motion for summary judgment has ample opportunity to engage in further discovery and place on the record any additional evidence which supports his position. Thus, they reflect our concern that a motion for summary

1. Where a trial court concludes that the supplementation of the record amounts to a discovery violation, in deciding whether it will consider the supplementing material on summary judgment, I believe that the trial court should use the test that we have concluded governs such matters, and balance the facts and circumstances presented to determine the prejudice to each party. *See Miller v. Brass Rail Tavern Inc.*, 541 Pa. 474, 664 A.2d 525, 532 n. 5 (1995) (citing *Feingold v. SEPTA*, 512 Pa. 567, 517 A.2d 1270, 1273 (1986)).

judgment not be precipitously granted. At the same time, however, an interpretation of Pa.R.C.P. 1035.3(b) that does not give effect to the trial court's authority under Pa.R.C.P. 1035.3(c) to evaluate the manner by which a party secured the evidence with which he supplemented the record and reject it in the appropriate circumstances, can lead to the result that appears to be present here—an end-run around a case management order, a trial court's denial of a petition for extraordinary relief, and the requirements of Philadelphia's case management process, which has served to control Philadelphia's crowded court dockets.

Thus, like the majority, I would affirm the Superior Court's order which reversed the trial court's entry of summary judgment. I would, however, remand this case to the trial court, directing it to consider whether it should exercise the discretion that Pa.R.C.P. 1035.3(c) gives it to enter an order which it deems just in regard to Appellant's motion for summary judgment and Appellees' response thereto.

With respect to the coordinate jurisdiction doctrine question this appeal raises, I do not agree with that portion of the majority's analysis which relies on one of the doctrine's exceptions to reach its conclusion that Judge Abramson was not necessarily precluded from considering Appellees' expert reports in light of Judge O'Keefe's prior rulings. Instead, I believe that under our prior teaching, the rule does not apply in the first place and that the rule's exceptions have no relevance.

In *Goldey v. Trustees of the Univ. of Pennsylvania,* 544 Pa. 150, 675 A.2d 264 (1996), defendants filed a second motion for summary judgment based on a release, just prior to the scheduled start of trial. Several months before, however, defendants' first motion for summary judgment based on the release had been denied by another judge sitting in the same case in the same court. We were called upon to explain the coordinate jurisdiction rule. We stated:

Where the motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which

differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion. However, a later motion should not be entertained or granted when a motion *of the same kind* has been previously been denied, unless intervening changes in the facts or the law clearly warrant a new look at the question.

*Id.* at 267 (emphasis in original).

I understand *Goldey* to mean that if a judge has a motion before him which differs from a motion that another judge has previously decided, he need not concern himself with the coordinate jurisdiction doctrine. If, however, the later motion does not differ from one already determined, then the doctrine applies to preclude him from considering the matter, unless certain exceptional circumstances allow him to depart from the rule. That is to say, the rule's exceptions—an intervening change in the controlling law or a substantial change in the facts or evidence giving rise to the dispute or a prior holding that is clearly erroneous and would create a manifest injustice if followed, *Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326, 1332 (1995)—arise only if the rule comes into play.

Here, Judge O'Keefe issued a case management order and decided whether to grant a petition for extraordinary relief and extend the time of discovery. Judge Abramson was presented with a motion for summary judgment. In my view, as the motions before the two judges differed, the coordinate jurisdiction rule was not even triggered. Thus, I would simply conclude that the rule did not apply in this case. I, therefore, see no need to consider any of the rule's exceptions.

Justice CASTILLE and Justice NEWMAN join this concurring and dissenting opinion.

Justice NIGRO, dissenting.

As I believe that the coordinate jurisdiction rule barred Judge Abramson from reconsidering the discovery and expert report deadlines in the case management order, and that, under the circumstances, he was not free to consider on

summary judgment the expert reports Appellees submitted after the cut-off date for such reports in the court scheduling order, I respectfully dissent.

More civil litigation occurs in Philadelphia County than in the remaining counties of this Commonwealth combined. Several years ago, the county had reached a point where its inventory of cases essentially overwhelmed it.[1] Among the measures the First Judicial District ("First District") took to remedy this judicial gridlock was the adoption of strict case management orders. These orders were designed to move cases through the system, from Complaint to trial, in anywhere from one to three years, depending largely on the complexity of the case. As part of that reorganization, the First District issued a regulation that prohibited parties from unilaterally extending case management deadlines by agreement and clarified that any petition to extend a deadline had to be filed with the court before that deadline had passed. *See* Philadelphia Court of Common Pleas Reg. No. 95–1; *see also* Philadelphia Court of Common Pleas Reg. No. 95–2. Thereafter, it issued an administrative order, stating that no new expert reports could be submitted after the passing of an expert report deadline, absent extraordinary circumstances. Admin. Doc. No. 3 of 1998, *reprinted in* 28 Pa. Bull. 2919.

The majority of this Court has determined that these procedures, while successful in reducing the litigation logjam,[2] are inconsistent with the Rules of Civil Procedure and, therefore, cannot be enforced. I simply cannot agree with this conclusion. First, contrary to the majority, I do not read Rule

---

**1.** As recently as 1994, civil litigants in Philadelphia had to wait an average of five to six years for a trial, and the Court of Common Pleas of Philadelphia County had a backlog of 28,000 major jury cases. *See* Introduction, *Civil Trial Division Administration at a Glance 2000* ("Civil Administration 2000").

**2.** The success of this new case management system has been dramatic. By 1999, the current inventory of major jury cases in the First District was just 6,000. *See* Introduction, *Civil Administration 2000*. Moreover, the average wait for trial in simple cases was just one year, just two years in standard cases, and just three years in complex major jury cases. *Id.* Notably, these time frames are consistent with the recommended standards for Civil Delay Reduction set forth by the American Bar Association. *Id.*

1035.3(b), regarding responses to summary judgment motions, as permitting the responding party to supplement the record without limitation after discovery is closed. In my view, in order to avoid eviscerating the statewide rules of discovery, permissible "supplementation" under Rule 1035.3(b) after discovery has ended must be limited to materials that the supplementing party was not previously obligated to provide to its opponent pursuant to the Rules of Civil Procedure or court order.[3] Thus, the party may, as a general rule, supplement the record with new affidavits of testifying witnesses, evidence that was never requested in discovery or supplemental discovery responses that it was not otherwise required to serve under Rule 4007.4.[4] However, I simply do not believe that after discovery has ended, a party should be able to use Rule 1035.3(b) as a mechanism by which to belatedly produce evidence it has improperly withheld.[5] Similarly, after a court-imposed deadline for expert reports has passed, a party should not be able to utilize Rule 1035.3(b) to produce new expert reports with impunity, as the majority suggests.[6]

**3.** Rule of Civil Procedure 1035.1 defines "record" to include all of the pleadings, as well as the discovery materials and expert reports already exchanged, even though these materials may not have been filed with the court and, thus, made part of the official court record. The "supplemental" record material contemplated in Rule 1035.3(b) must therefore refer to something other than· the pleadings, discovery and expert reports already exchanged.

**4.** Under Rule of Civil Procedure 4007.4, a party has no duty to supplement its prior discovery responses to·include information thereafter acquired except in specified circumstances. Pa.R.Civ.P. 4007.4. Accordingly, supplementation under Rule 1035.3(b) after the close of discovery may include material that is responsive to previous discovery, but which the party had no duty to produce pursuant to Rule 4007.4.

**5.** If, on the other hand, a summary judgment motion is filed *before* the close of discovery, supplementation under Rule 1035.3(b) permits the responding party to attach to its response additional evidence that has been produced in the ongoing discovery.

**6.** The majority contends that the explanatory comment to Rule 1035.2 supports its conclusion that broader supplementation is permitted even after discovery is closed and expert report deadlines have passed. I disagree. Although the comment states that the purpose of the rule is "not to eliminate meritorious claims prematurely before relevant discovery has been completed," I do not read this as dictating that scheduling deadlines must be overridden any time a party has failed to

In his concurring opinion, Justice Saylor does not specifically address the scope of permissible supplementation under Rule 1035.3, but rather focuses on the procedures a party must utilize in order to have objectionable material stricken from the record. In that regard, Justice Saylor would place the burden on the party seeking summary judgment not only to move to preclude any objectionable evidence, but also to prove that it will be prejudiced by its opponent's use of such evidence.[7] I recognize that it will often be necessary for the party seeking summary judgment to file some sort of motion to alert the court that the non-moving party has introduced evidence into the record that should be precluded, but I do not believe that the Rules of Civil Procedure require such a motion when the opposing party has failed to produce an expert report by a court-imposed deadline. Moreover, in such circumstances, I do not believe that the Rules require the party that objects to the evidence to establish prejudice in order for the Court to preclude the previously undisclosed expert from testifying.

In reaching the conclusion that preclusion can only be accomplished by motion, Justice Saylor relies primarily on Rule 4019(a)(1), which empowers a court "on motion" to enter a preclusionary order as a discovery sanction and requires a consideration of prejudice. Pa.R.Civ.P. 4019(a)(1). The Rules of Civil Procedure, however, treat failure to identify experts separately from the more routine failures to comply with discovery that Rule 4019(a)(1) is primarily designed to ad-

properly develop its cases within the time restrictions set forth in the court schedule. Rather, I understand the comment to state merely that courts should not grant summary judgment before giving the opposing party a *reasonable opportunity* to develop its opposition, as is done by setting forth a reasonable time period for discovery.

7. Justice Saylor states that "[i]n the absence of an order imposing preclusive sanctions, Civil Procedure Rule 1035.3(b) grants the non-moving party thirty days to supplement the record in response to a summary judgment motion." This puts the cart before the horse. A party cannot be expected to move to preclude evidence that it does not know exists. Moreover, even if the party is somehow alerted to the withheld evidence prior to its receipt of the summary judgment response, we simply cannot expect it to move to preclude the evidence before its opponent seeks to rely upon it.

dress,[8] and clearly permit the court to preclude undisclosed experts without a motion or finding of prejudice. *See* Pa. R.Civ. P. 4003.5(b); Pa. R.Civ. P. 4019(i). Specifically, Rule 4003.5(b) states that "[a]n expert witness whose identity is not disclosed in compliance with subdivision (a)(1) of this rule [in response to expert interrogatories] *shall not be permitted to testify* on behalf of the defaulting party at the trial of the action." [9] Pa.R.Civ.P. 4003.5(b) (emphasis added). Similarly, Rule 4019(i) states with respect to witnesses in general that "a [w]itness whose identity has not been revealed as provided in this chapter [regarding discovery] *shall not be permitted to testify* on behalf of the defaulting party at the trial of the action." [10] Pa.R.Civ.P. 4019(i). The only required exception to either of these rules is when the failure to disclose the witness "is the result of *extenuating circumstances beyond the control of the defaulting party*," in which case the "court may grant a continuance or other appropriate relief." [11] Pa. R.Civ.P. 4003.5(b) (emphasis added); Pa.R.Civ.P. 4019(i).

8. The motions contemplated in Rule 4019(a)(1) are typically motions to compel discovery during the discovery period, such as motions to compel answers to interrogatories or document requests, motions to compel the identification of a corporate designee, and motions to compel witnesses to appear at deposition. *See* Pa. R.Civ. P. 4019(a)(1)(i)-(viii). It is self-evident that such issues, which arise while the parties are independently conducting discovery, require the filing of a motion in order to obtain the court's attention.

9. Subdivision (a)(1) of the Rule requires a party served with expert interrogatories to provide not only the name of any expert it expects to call as a witness at trial, but also the "substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." Pa. R.Civ. P. 4003.5(a)(1).

10. The 1978 Explanatory Note to Rule 4019(i) reiterates yet again that: "Subdivision (i) adds a new provision for sanctions for failure to identity witnesses as to whom discovery has been sought. A witness whose identity has not been revealed as provided by the Rules will not be permitted to testify at trial. If the failure to disclose his identity was the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief."

11. I recognize that in *Feingold v. Southeastern Pennsylvania Transportation Authority*, this Court stated that the text of Rule 4003.5(b) "specifically provides that the presiding court must balance the facts and circumstances of each case to determine the prejudice to each party." 512 Pa. 567, 517 A.2d 1270, 1273 (1986). However, I simply do not see

Given these rules, I believe that it is clearly within a judicial district's prerogative to set strict case management deadlines for the identification of experts, and to impose penalties of preclusion for failure to meet those deadlines. Moreover, as the Rules require only that the court consider whether "extenuating circumstances beyond the control of the defaulting party" excuse such a default, a judicial district is free to permit preclusion of experts without requiring a finding of prejudice. Significantly, the First District's protocol in Administrative Docket No. 03 of 1998 essentially tracks the "extenuating circumstances" language of the rules, stating that "[t]he dates set forth in the Case Management Order are deadlines after which, in the absence of extraordinary circumstances, no new experts or theories can be identified." Accordingly, unlike the majority, I believe that enforcement of the First District's scheduling orders and preclusion of expert witnesses who are not identified by the date set forth in any such order are entirely consistent with the Pennsylvania Rules of Civil Procedure.

I also believe that enforcement of the scheduling order in the instant case led to a fair and equitable result. Appellees filed their initial complaint in this case on April 10, 1997. On July 24, 1997, the trial court entered its scheduling order, giving the parties over fifteen months (until November 2, 1998) to conduct discovery, and not requiring Appellees to submit expert reports until December 7, 1998. It was not until November 14, 1998, almost sixteen months later, and nearly two weeks *after* the November 2nd discovery cut-off date, that Appellees filed their motion for extraordinary relief, asking for yet another nine months of discovery and an extension of the expert deadlines. In their motion, Appellees represented that one of the corporate defendants was suffering financial hardship and no longer had counsel. They further represented that there were "several days of depositions left to be taken" and therefore contended that the requested extension was both necessary and warranted. However, nowhere in the motion did Appellees state when in

such a requirement in the language of the rule and, therefore, respectfully disagree.

the nearly sixteen months allotted for discovery the defendant had lost its counsel, thus stalling discovery.[12]   Nor did they attempt to explain what discovery they had conducted in the preceding months or detail what discovery remained to be taken.[13]   Moreover, in filing their motion *after* the discovery deadline, Appellees violated the local court rule that petitions for extraordinary relief must be filed "prior to the deadline that is sought to be changed."   Philadelphia Court of Common Pleas Reg. No. 95-2.   Under these circumstances, where there was no indication that Appellees made a good faith attempt to comply with the more than reasonable scheduling order, I do not believe that Judge O'Keefe erred in denying their motion for extraordinary relief.[14]

12.   Specifically, the motion stated that "[a]s a result of the downturn in the Asian economy, Defendant John Royle has suffered serious financial setbacks at the current time.   Upon advice of counsel for Defendant John Royle[,] it is understood that John Royle is in reorganization and hopeful of recovery in the next 4-6 months."   With such vague representations, one is left with the distinct impression that Royle did not face its allegedly debilitating "financial setbacks" until the end of the discovery period, if not after discovery had already closed.

13.   Again, given the absence of specificity, the motion leaves one with the impression that Appellees had thus far conducted little discovery. In fact, the parties' briefs to this Court indicate that Appellees waited over a year after the entry of the scheduling order to serve written discovery on Appellant Shincor Silicones, Inc.

14.   The comments to Rule 206.1 of the Philadelphia Local Rules of Civil Procedure direct litigants to the court publication "Civil Trial Division Administration, at a Glance" for procedures relative to motions for extraordinary relief.   The year 2000 version of that publication reiterates that any extraordinary relief petition "must be filed prior to the deadline that the party is seeking to change."   *Civil Administration 2000*, at 130.   Furthermore, it warns:

> Counsel who do little work on the case in timely fashion but nevertheless request extensions of court ordered deadlines are unlikely to receive them.   Counsel are expected to demonstrate regular and timely efforts to complete discovery and make a record of requests and/or motions to compel production of answers to interrogatories, documents, depositions, etc.
>
> Generally speaking, the movant is expected to demonstrate extraordinary and nonforeseeable circumstances justifying the deadline extension request.

*Id.* at 132.   Finally, it states that "requests for extensions of court ordered deadlines should be avoided and utilized only as a last resort and with compelling reasons offered in support thereof."   *Id.* at 133.

Furthermore, Judge O'Keefe having denied the motion, I believe that the coordinate jurisdiction rule precluded Judge Abramson from reconsidering the discovery and expert deadlines and, instead, obligated him to enforce them. The majority posits two reasons why the coordinate jurisdiction rule did not preclude Judge Abramson from considering the untimely expert reports. First, it states that "it was perfectly proper for Judge Abramson to reexamine the discovery timetable in order to correct [Judge O'Keefe's] error" under the "manifest injustice" exception to the coordinate jurisdiction rule. Majority Op. at 783. Initially, I note that the sole authority for the "manifest injustice" exception is this Court's dicta in *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1332 (1995), rendering the exception of questionable validity. Moreover, in my view, such an exception is fraught with peril, because, if applied too liberally, it essentially invites judges to ignore any prior ruling which will arguably alter the course of the litigation and with which the judge disagrees. That said, assuming *arguendo* that the exception is valid in certain limited circumstances, I disagree that it would apply here, because, in my view, Judge O'Keefe did not err.

The majority also states that the coordinate jurisdiction rule does not apply because Judge O'Keefe and Judge Abramson were asked to resolve two different questions. However, while the ultimate question Judge Abramson was asked to resolve, *i.e.*, whether summary judgment should be granted, was distinguishable from the question Judge O'Keefe considered, *i.e.*, whether deadlines should be extended, the same is not true of the threshold question necessarily before Judge Abramson, *i.e.*, whether to retroactively extend the expert deadline Judge O'Keefe had enforced so as to permit consideration of Appellees' expert reports in connection with the summary judgment motion. Given that Judge Abramson was, at least in my view, precluded under the coordinate jurisdiction rule from second-guessing Judge O'Keefe's refusal to extend the expert deadline, he was barred from considering the untimely expert reports when ruling on summary judg-

ment.[15] On the other hand, whether or not to grant summary judgment on the remaining evidence was a new question that Judge Abramson was free to resolve independently.

For the foregoing reasons, I would reverse the order of the Superior Court and reinstate the trial court's order granting summary judgment in favor of Appellant Shincor Silicones, Inc. and against Appellees.

---

**15.** As stated above, before precluding expert testimony under Rule 4003.5(b), a Court need only consider whether "extenuating circumstances beyond the control of the defaulting party" caused the delay in the expert disclosure. Pa.R.Civ.P. 4003.5. As Appellees could not establish their entitlement to an extension of the discovery and expert deadlines here, there were clearly no such "extenuating circumstances" excusing their failure to produce expert reports in a timely fashion.