J-S03004-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM M. MOORE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PENN HIGHLANDS HEALTHCARE, | : | No. 26 WDA 2020 |
| D/B/A PENN HIGHLANDS DUBOIS, | : | |
| UNIVERSITY ORTHOPEDICS CENTER | : | |

Appeal from the Order Entered December 19, 2019
In the Court of Common Pleas of Clearfield County Civil Division at
No(s):  105 C.D. 2017

BEFORE:   DUBOW, J., MURRAY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED:  March 16, 2021**

Appellant, William M. Moore, appeals from the December 19, 2019 Order entered in the Clearfield County Court of Common Pleas granting Penn Highlands Healthcare d/b/a Penn Highlands Dubois's Motion for Summary Judgment and dismissing Appellant's claims with prejudice in this medical and corporate negligence action.  Appellant also challenges the August 20, 2019 Order denying his Motion to Compel Additional Discovery as untimely.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  On January 28, 2015, Appellant underwent knee replacement surgery performed by Dr. Paul R. Senisba, a physician employed by defendant University Orthopedics

_____

[*] Retired Senior Judge assigned to the Superior Court.

Center ("UOC"). Appellant's surgery took place at Penn Highlands-Dubois ("Penn") hospital. Dr. Sensiba performed the surgery without complication. Dr. Sensiba's physician's assistant, Jonathan Burns, PA-C, discharged Appellant from Penn the following day with instructions to keep the surgical wound clean and dry. At the time of discharge, PA Burns noted the absence of any signs of infection at the surgical and wound drainage sites.

On February 11, 2015, Appellant attended a routine medical appointment at UOC for removal of his surgical staples. At that appointment, Appellant reported having bumped his knee. PA Burns drained non-infected fluid from the surgical site and Appellant received additional staples at the edges of his surgical wound. Appellant also attended a follow-up visit at UOC two days later, on February 13, 2015. Appellant did not present at that visit with symptoms of a surgical site infection.

More than two weeks after his surgery, on February 14, 2015, Appellant fell in his kitchen and his surgical wound opened. Appellant waited for two days from the time of his fall, however, to seek medical attention for his open wound. On February 16, 2015, a Penn doctor examined Appellant, diagnosed Appellant with an infection in his knee, and admitted Appellant for in-patient treatment. Fluid from Appellant's surgical wound cultured positive for "Clostridium perfringens," a rare type of surgical infection originating in a

patient's own bowel, and not from an environmental source.[1]  Doctors discharged Appellant from Penn on February 19, 2015.

Following Appellant's February 16, 2015 hospitalization, on March 25, 2015, Appellant received a letter from Kathy Lemmon, the then-director of Penn's Infection Prevention and Control.  The letter stated, in relevant part that "I am writing to inform you that a Hospital Associated Infection[2] was identified during routine review of your medical records from your recent hospitalization.  You were diagnosed and treated for a surgical site infection following knee surgery on 1/28/15."  The letter did not indicate that Appellant contracted the infection during his January 28, 2015 surgery.

_____

[1] Appellant recovered from this infection, but subsequently developed, in June 2015, an infection from a different kind of bacteria, "Pseudomonas aeruginosa."  Appellant continued to receive treatment for his knee at Penn until approximately 2017.

[2] The parties use the terms "Hospital Associated Infection" and "Health care-associated infection" interchangeably.  "Health care-associated infection" is a legal term of art defined in the Medical Care Availability and Reduction of Error ("MCARE") Act (the "Act"), 40 P.S. § 1303.402, and refers to an infection that, *inter alia*, "occurs in a patient in a health care setting."  Relevantly, the Act requires a hospital to notify a patient any time the hospital identifies a surgical site infection, regardless of the cause of the infection.  Notification under the Act does not constitute an acknowledgement of admission of liability.  *Id.* at § 1303.308(b).  In addition, documents created or prepared for the purposes of compliance with the Act "shall not be discoverable or admissible as evidence in any civil or administrative action or proceeding.  *Id.* at § 1303.311.

On March 7, 2017, Appellant filed a Complaint against Penn and UOC[3] raising medical negligence and corporate negligence claims. On June 6, 2017, Appellant filed an Amended Complaint. Essentially, Appellant alleged that Penn failed in its duty to prevent Appellant from acquiring an infection in his knee. Amended Complaint, 6/6/17, at ¶ 37.

The case proceeded through discovery. On September 25, 2018, the trial court held a case management conference. At the conference, Appellant requested that the court schedule the case for trial. Ultimately, the trial court instructed all counsel to make reasonable efforts to conclude discovery prior to March 7, 2019, at which time the court intended to hold a second case management conference.

On November 29, 2018, Appellant produced expert reports from Dr. Peter Jenei, an internal medicine physician, and Timothy F. Hawkins, a board-certified Healthcare Safety Professional and Hospital Administration Executive. These experts reviewed Appellant's medical records and Penn's statement that Appellant had contracted a Hospital Associated Infection. Neither report provided any factual analysis of the procedure performed by Dr. Sensiba or of Penn's policies and procedures.

_____

[3] Appellant and UOC subsequently entered into a settlement agreement. Thus, on September 16, 2019, the trial court entered an Order "excus[ing UOC] from any further active participation in this litigation." Order, 9/16/19. UOC is not a party to this appeal.

On March 7, 2019, the trial court held a second case management conference after which it entered an amended case management Order. Relevantly, this Order set July 15, 2019 as the deadline for all discovery including depositions, and September 15, 2019 as the deadline for filing any motion for summary judgment.

On June 14, 2019, just one month before the discovery deadline, Appellant served Penn with a "Second Set of Interrogatories" in which he sought discovery of Penn's operating room policies and procedures pertaining to surgical skin preparation prior to total joint replacement procedures, microbiology records from the hospital's lab that performed infection cultures in order to identify whether any other surgical patients had developed infections, and other discovery pertaining to infection control policies. Penn objected to this set of interrogatories as overly broad, vague, and burdensome. It also asserted that various statutory privileges protected its policies and procedures from discovery.

On June 24, 2019, Appellant informed Penn by letter that he sought to depose seven of Penn's employees within 30 days. Appellant did not identify the Penn employees by name or specific job title. Penn objected to these depositions the next day.

On July 10, 2019, Appellant filed a motion to amend the case management order. The trial court granted the motion and, relevantly, extended the discovery deadline by sixteen days to July 31, 2019.

On July 24, 2019, Appellant filed a Motion to Compel Attendance [at] Depositions and to Suspend the Second Case Management Order. On August 2, 2019, Appellant filed a Motion to Compel Answers to Plaintiff's Interrogatories and Request for Production of Documents and to Suspend the Second Case Management Order. Following a hearing, on August 20, 2019, the trial court denied the motions as untimely, also finding that Appellant's discovery requests were overly broad, vague, and unreasonably burdensome.

At the close of discovery, Penn filed a Motion for Summary Judgment asserting that Appellant had failed to present a genuine issue of material fact as to the duty Penn owed to Appellant, or causation of injury and damages.

The trial court held a hearing on Penn's Motion for Summary Judgment. On December 8, 2019, the court granted Penn's Motion and dismissed Appellant's claims with prejudice.

This appeal followed. Appellant has complied with the trial court's Order to file a Pa.R.A.P. 1925(b) Statement, and the trial court filed a supplement to its December 8, 2019 Opinion and Order in lieu of filing a Rule 1925(a) Opinion.

Appellant raises the following three issues on appeal:

1. Did the trial court err in granting summary judgment concerning [Penn's] corporate negligence where genuine issues of material fact existed?

2. Did the trial court err in granting summary judgment where it erroneously found that [Appellant's] experts were non-physicians where it was clear that Dr. Peter Jenai is a medical doctor?

3. Did the trial court err in denying [Appellant's] Motion to Compel Answers to Plaintiff's Interrogatories and Requests for Production of Documents and Motion to Compel Attendance of [*sic*] Deposition, which precluded discovery of necessary facts regarding [Penn's] policies and procedures for infection control?

Appellant's Brief at 8

## **Summary Judgment Standard of Review**

Appellant's first two issues challenge the trial court's Order granting summary judgment in favor of Penn. Our Supreme Court has clarified our role as the appellate court as follows:

> On appellate review [ ], an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But[,] the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

**Summers v. Certainteed Corp.**, 997 A.2d 1152, 1159 (Pa. 2010) (citations and quotation omitted).

A trial court may grant summary judgment "only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." **Id.** (citation and quotation omitted); **see also** Pa.R.C.P. 1035.2(1). "When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party." **Summers**, **supra** at 1159 (citation omitted). "In so doing, the trial court must resolve all doubts as to the existence of a genuine

issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt." *Id.* (citation and internal quotation marks omitted).

"Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment." *Truax v. Roulhac*, 126 A.3d 991, 997 (Pa. Super. 2015), (citation and quotation omitted). "Further, failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law." *Id.* (citation and internal quotation marks omitted). "If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied." *Id.* (citation and quotation omitted).

**Doctrine of Corporate Negligence**

The doctrine of corporate negligence, under which a hospital can be held directly liable for negligence, creates a non-delegable duty on a hospital to uphold a proper standard of care to patients. *Thompson v. Nason Hosp.*, 591 A.2d 703, 707 (Pa. 1991). "A cause of action for corporate negligence arises from the policies, actions[,] or inaction of the institution itself rather than the specific acts of individual hospital employees. *Brodowski v. Ryave*, 885 A.2d 1045, 1056 (Pa. Super. 2005) (citation and quotation marks omitted).

Our law will impose liability if the hospital fails to ensure a patient's safety and well-being at the hospital. *Thompson*, 591 A.2d 707. A hospital is directly liable under the doctrine of corporate negligence if it fails to uphold any one of the following four duties:

1. a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment;

2. a duty to select and retain only competent physicians;

3. a duty to oversee all persons who practice medicine within its walls as to patient care; and

4. a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients.

*Id.* (citations omitted)

Furthermore, to present a *prima facie* case of corporate negligence, a plaintiff must demonstrate all of the following elements:

1. the hospital acted in deviation from the standard of care;

2. the hospital had actual or constructive notice of the defects or procedures which created the harm; and

3. that the conduct was a substantial factor in bringing about the harm.

*Rauch v. Mike-Mayer*, 783 A.2d 815, 827 (Pa. Super. 2001) (citation omitted). Because the doctrine of corporate negligence contemplates a "kind of systemic negligence" on the part of the hospital, evidence of actual or constructive notice is critical. *Kennedy v. Butler Mem. Hosp.*, 901 A.2d 1042, 1045 (Pa. Super. 2006).

"Unless a hospital's negligence is obvious, an expert witness is required to establish two of the three prongs: that the hospital deviated from the

standard of care and that the deviation was a substantial factor in bringing about the harm." **Rauch**, 783 A.2d at 827 (citation omitted). The expert testimony required to establish a *prima facie* breach of a corporate duty requires more than simply alleging that an agent or employee erred; the focus of the expert testimony must be on what a reasonable hospital under similar circumstances should have done. **Welsh v. Bulger**, 698 A.2d 581, 585-87 (Pa. Super. 1997).

## **Issues 1 and 2:** **Summary Judgment**

In his first two issues, Appellant asserts that the trial court erred in granting summary judgment in favor of Penn. Appellant's Brief at 20. First, Appellant disputes the trial court's finding that he failed to present genuine issues of material facts as to duty, causation, and damages. **Id.** at 21-33. He argues that the purported inadequacy and insufficient specificity of his experts' reports were not grounds for the entry of summary judgment. **Id.** at at 25 n.4, 28. Appellant claims instead that Penn should have filed a motion requesting that Appellant's experts file supplemental reports to address any deficiencies and should have pursued additional discovery, including deposing Appellant's expert witnesses. **Id.** at 25 n.4, 28-29. Appellant also asserts that the entry of summary judgment was improper because Penn did not provide any evidence within its Motion for Summary Judgment that it followed an infection control policy during Appellant's surgery, or that its infection control protocols were adequate. **Id.** at 31-32.

In his second issue, Appellant claims that the trial court erred in granting summary judgment in part based on its error that Appellant's expert, Dr. Jenai, was not a medical doctor. *Id.* at 33-35.

The court issued an Order and Opinion in which it explained the basis for its decision as follows:

> Expert testimony must indicate in part what a reasonable hospital under similar circumstances would have done. Additionally, it must be shown that the hospital knew or should have known of the problem and failed to take action. Lastly, the kind of causal link between the hospital[']s action or inaction and the alleged injuries.
>
> The [c]ourt is hard-pressed to find any evidence in the record that suggests a genuine issue of material fact as to any of the prongs outlined above as to corporate negligence on the part of [Penn]. Both experts, who are non-physicians, merely provide vague[,] conclusory statements with no supporting facts whatsoever. Without more, [Appellant] fails to establish a *prima facie* case for negligence and this [c]ourt believes summary judgment is in fact proper

Trial Ct. Opinion, 12/8/19, at 5.

In a subsequent Opinion, the court conceded that it incorrectly identified Appellant's expert Dr. Jenai as not being a medical doctor. Trial Ct. Op., 6/11/20. Notwithstanding, the court concluded that "the fact that Dr. Peter Jenai is a medical doctor would not have altered the [c]ourt's rationale in granting [s]ummary [j]udgment in favor of [Penn]." *Id.*

Following our review of the record, we agree with the trial court that Appellant failed to adduce evidence sufficient to demonstrate the existence of any genuine issues of material fact. In particular, Appellant did not produce any factual evidence that Dr. Sensiba or Penn did anything inappropriate

during Appellant's surgery. It is undisputed that Dr. Sensiba discharged Appellant from Penn the day after his surgery without an infection and it was more than two weeks later, after Appellant had fallen in his kitchen, that Appellant's wound culture revealed an infected surgical wound.

Appellant produced two expert reports. Neither of Appellant's experts offered substantive analysis of the particulars of the surgery performed on Appellant by Dr. Sensiba, Penn's infection and sterilization protocols, how those protocols fell below the standard of care, or how Penn's actions or inactions were the cause of any harm to Appellant. The record is similarly devoid of any evidence that Penn had notice that its protocols allegedly fell below the standard of care.

We also agree that the trial court's misstatement pertaining to Dr. Jenei's credentials would not have changed the outcome of Penn's Motion for Summary Judgment. Whether Dr. Jenei was a doctor, as explained above, his expert report did not provide evidence establishing a genuine issue of material fact as to the elements of Appellant's corporate negligence claim.

Appellant's arguments—that the court erred in granting summary judgment because Penn did not: (1) conduct additional discovery; (2) depose Appellant's experts; (3) request the court to order Appellant's experts to supplement their reports; or (4) provide any evidence within its Motion for Summary Judgment that it followed an adequate infection control policy during Appellant's surgery—lack merit. Simply, it was Appellant's burden, not Penn's, to produce evidence from which the court could find the existence of

a genuine issue of material fact for consideration by a jury or other fact-finder was on Appellant and not on Penn.  Appellant failed to meet this burden.

In sum, Appellant failed to adduce sufficient evidence from which a fact-finder could conclude that Penn acted in deviation from the standard of care, that Penn had actual or constructive notice of the alleged defects or procedures that created any harm, and that Penn's conduct was a substantial factor in bringing about that harm.  The record simply establishes that Appellant underwent knee surgery on January 28, 2015, and sometime thereafter he developed an infection; anything beyond that is speculative at best.  Accordingly, Penn was entitled to judgment as a matter of law and the trial court properly granted summary judgment in Penn's favor.

**Issue 3: Discovery Dispute**

In his final issue, Appellant claims that the trial court abused its discretion in denying his Motion to Compel Answers to Interrogatories and Requests for Production of Documents and his Motion to Compel deposition attendance.  Appellant's Brief at 35.  He argues that the court's ruling prejudiced him because it precluded from him discovering the very evidence of corporate negligence that the court found lacking when it granted Penn's Motion for Summary Judgment.  *Id.* at 35-36.  He assails the trial court's findings that his discovery requests were untimely, unduly burdensome, vague, and overly broad.  *Id.* at 36.  Appellant emphasizes that he served Penn with the disputed interrogatories within the July 31, 2019 discovery deadline and that he filed his Motion to Compel only two days after the

deadline. *Id.* at 36-37. With respect to the depositions for which he provided notice on June 24, 2019, Appellant notes that he filed his Motion to Compel within the discovery deadline. *Id.* at 39.

We review lower court discovery orders for an abuse of discretion. ***Lockley v. CSX Transp. Inc.***, 5 A.3d 383, 388 (Pa. Super. 2010). ***See also PECO Energy Co. v. Insurance Co. of North America***, 852 A.2d 1230, 1233 (Pa. Super. 2004) ("The trial court is responsible for overseeing discovery between the parties and therefore it is within that court's discretion to determine the appropriate measure necessary to insure adequate and prompt discovering of matters allowed by the Rules of Civil Procedure.") (citation, internal brackets, and quotation marks omitted)).

A Pennsylvania court must give parties reasonable time to complete discovery before it will entertain any motion for summary judgment. ***Reeves v. Middletown Athletic Ass'n***, 866 A.2d 1115, 1124 (Pa. 2004). A party seeking discovery must do so in a timely manner. *Id.* Lower courts should consider the basis for a party's request to extend a discovery deadline; declining to do so may be unreasonable where the circumstances support extending the discovery deadline. ***Anthony Biddle Contractors, Inc. v. Preet Allied Am. St. LP***, 28 A.3d 916, 923 (Pa. Super. 2011) (citing ***Gerrow v. John Royle & Sons***, 813 A.2d 778, 783-84 (Pa. 2002) (OAJC).

This Court has long held that local courts have the power to formulate their own rules of practice and procedure. ***Sanders v. Allegheny Hospital–Parkview Div.***, 833 A.2d 179, 183 (Pa.Super.2003); ***Murphy v. Armstrong***,

622 A.2d 992 (Pa. Super. 1993). We have further recognized that multiple delays "would disrupt the efficient and just administration of justice and would send a blatant message that case management deadlines are meaningless." *Kurian ex rel. Kurian v. Anisman*, 851 A.2d 152, 162 (Pa. Super. 2004).

In support of his claim that the trial court abused its discretion, Appellant has cited extensively to extra-jurisdictional and non-binding lower court decisions, as well as to boilerplate case law outlining general discovery precepts. Appellant's Brief at 40-46. The singular precedential decision relied upon by Appellant in support of his claim that the trial court abused its discretion in precluding further discovery—*Anthony Biddle Contractors, Inc. v. Preet Allied Am. St. LP*, 28 A.3d 916 (Pa. Super. 2011)—is inapposite.

In *Biddle*, the plaintiff initiated his cause of action in 2009. On June 17, 2009, the trial court entered a case management order setting a discovery deadline of April 5, 2010. Subsequently, on November 24, 2009, the plaintiff joined two additional defendants. At the close of discovery, the plaintiff filed a motion to extend the discovery deadline because the two additional defendants had not answered the discovery sent to them. Despite this procedural posture and that the court had, to date, not extended the discovery deadline, the court denied the plaintiff's request. This Court concluded that the trial court abused its discretion in denying the extension request and reversed the order of the trial court.

Instantly, Appellant sought discovery of, *inter alia*, the infection control policies and procedures used by Penn and to depose seven of Penn's employees. On August 16, 2019, the trial court held a hearing on Appellant's Motions to Compel and Suspend the Case Management Order at which Appellant argued that his discovery requests were "very timely" and "well in advance[] of the deadline[.]" N.T. Hr'g, 8/16/19, at 5.

The record belies this assertion. At the time Appellant requested this discovery and filed his motions to compel, nearly two and a half years had passed since he commenced the action. During those two and a half years, both parties had conducted discovery and the trial court had granted Appellant numerous extensions of the discovery deadline.

Moreover, the court had already scheduled trial for a date certain in January 2020, set September 17, 2019 for jury selection, and established September 15, 2019, as the deadline for filing motions for summary judgment. The trial court is under no obligation to adjust its busy docket to accommodate Appellant's "11th hour fishing expedition"[4] after Appellant had had the opportunity to engage in discovery for nearly two and a half years.

Following our review, we do not discern any abuse of discretion on the part of the trial court in denying Appellant's request to compel discovery responses and depositions at this late stage. The court considered the basis for Appellant's request to compel discovery responses and depositions and to

_____

[4] N.T. Hr'g, 8/16/19, at 11-12.

extend the discovery deadline as set forth in his Appellant's Motions and as argued at the hearing. The trial court decision to decline to grant those Motions was reasonable in light of the procedural history of this case and, in particular, the upcoming jury selection and trial dates. Accordingly, Appellant is not entitled to relief on this claim.

Order affirmed.

Judge Murray joins the memorandum.

Judge Strassburger did not participate.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/2021