J-A04022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CALVIN LONG, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF: CARLEY LONG | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| BETHANY CHILDREN'S HOME, INC., D.B.A. BETHANY CHILDREN'S HOME, NORFOLK SOUTHERN CORPORATION AND NORFOLK SOUTHERN RAILWAY COMPANY | : : : : : : | |
| Appellees | : | No. 3528 EDA 2019 |

Appeal from the Judgment Entered December 5, 2019
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  No. 170403305

BEFORE:   STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                    **FILED:  MARCH 26, 2021**

Appellant, Calvin Long, individually and as administrator of the estate of Carley Long, appeals from the judgment entered in the Philadelphia County Court of Common Pleas, following entry of an order granting judgment notwithstanding the verdict ("JNOV") in favor of Appellee, Bethany Children's Home, Inc., d.b.a. Bethany Children's Home ("Bethany").[1]  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] In a separate order, entered January 15, 2019, the court granted the summary judgment motion filed by Appellees Norfolk Southern Corporation and Norfolk Southern Railway Company (collectively, "Norfolk").

The trial court opinion set forth the relevant facts of this appeal as follows:

> The decedent, Carley Long [("Decedent")], was a sixteen-year-old girl who resided by court order at Bethany Children's Home. Her time at Bethany followed a troublesome upbringing, in which she was subject to both physical and verbal abuse from her parents. Her father, [Appellant], was prone to drug and alcohol abuse, leading to the parents' separation and his time in rehabilitation, at which point the Office of Children, Youth and Families became involved on [Decedent's] behalf. On May 6, 2015, [Decedent] left her bedroom at Bethany and fled the building by walking down the central stairway to the basement emergency exit. [Decedent] tragically died after escaping when she was struck by [Norfolk's] train in an apparent suicide. The Register for the Probate of Wills in Berks County then granted her estate's Letters of Administration to [Appellant], evidenced in a short certificate.

(Trial Court Opinion, entered November 15, 2019, at 1-2) (internal citations to the record omitted).

Appellant commenced this action by filing a *praecipe* to issue writ of summons on April 24, 2017. On July 13, 2017, Appellant filed a complaint raising two counts of negligence, as well as wrongful death and survival actions. The court issued a case management order on August 4, 2017. Among other things, the order established a September 3, 2018 deadline for the identification of experts and submission of expert reports. Significantly, Appellant failed to serve any expert report regarding Norfolk's conduct before the deadline.

After the close of pleadings, Norfolk moved for summary judgment on

September 28, 2018. Norfolk alleged that Decedent was a trespasser on its property, and it owed no duty of care to Decedent except to refrain from causing her harm through willful or wanton conduct. Norfolk emphasized that Appellant's complaint alleged negligence only, and the complaint did not include allegations of willful or wanton conduct. Further, Norfolk argued that the record did not include any evidence that it acted willfully or wantonly in conjunction with Decedent's death.

On October 1, 2018, Appellant filed a motion to amend the complaint, seeking to incorporate language regarding Norfolk's willful and wanton conduct. That same day, Appellant filed a motion for extraordinary relief, requesting that the court extend the deadline for the submission of expert reports. The court denied Appellant's motion for extraordinary relief on October 19, 2018. On October 29, 2018, the court denied Appellant's motion to amend the complaint.

Also on October 29, 2018, Appellant filed an answer to Norfolk's summary judgment motion. Almost two months later, on December 18, 2018, Appellant filed a *praecipe* to attach an expert report to its answer to the summary judgment motion. The report was authored by Richard Beall, who purported to be an expert in the area of railroad operations and safety issues. In his report, Mr. Beall opined that Norfolk's train engineer acted recklessly, wantonly, and with indifference and disregard for human life. On December 20, 2018, Norfolk filed a supplement to its summary judgment motion,

opposing Appellant's *praecipe* to attach.

The court conducted a hearing on Norfolk's summary judgment motion on January 3, 2019.[2]  (**See** Opinion and Order, entered January 15, 2019, at 3).  During the hearing, Norfolk presented video from the "RailView" recording device that was affixed to the front of the train that struck Decedent.  (**Id.**)  "The video confirmed that the train's crew sounded the train's horn the instant that [Decedent] came into view up until the moment of impact."  (**Id.**)  (internal footnote omitted).  By order and opinion entered January 15, 2019, the trial court granted Norfolk's summary judgment motion.  The court did not consider Appellant's untimely expert report in deciding to grant the summary judgment motion, expressly concluding:

> [Norfolk] did not willfully or wantonly fail to guard or warn [Decedent] against a dangerous condition, use, or activity on its property.  Regarding any willful conduct by [Norfolk], no fact of record suggests that [Norfolk] desired to bring about the [collision], or that [Norfolk or the train's crew] were at least aware that [the collision] was substantially certain to ensue.

(**Id.** at 13) (internal citation and quotation marks omitted).

Appellant and Bethany proceeded to trial on March 22, 2019.  On April 8, 2019, the jury returned its verdict in favor of Appellant and against Bethany.  Specifically, the jury found that Bethany was negligent, and its negligence was a factual cause of harm to Decedent.  The jury awarded

---

[2] The certified record does not include notes of testimony for the January 3, 2019 hearing.

$625,000.00 in damages to the survivors, plus $2,300,000.00 in damages to Decedent for future loss of earnings and lost earnings capacity. Thus, the jury awarded a total of $2,925,000.00 in damages.

Bethany timely filed post-trial motions on April 18, 2019. In its motions, Bethany requested the entry of JNOV due to Appellant's failure to present sufficient evidence to establish a breach of duty or proximate causation. In the alternative, Bethany requested a new trial on all issues due to the misconduct of Appellant's trial counsel. By order and opinion entered November 15, 2019, the court granted Bethany's motion for entry of JNOV and vacated the jury verdict on all claims. In its opinion, the court agreed with Bethany that Appellant failed to present sufficient evidence to establish a breach of duty or proximate causation. (**See** Trial Court Opinion at 4-13). The court also found that, if it had not granted the motion for JNOV, Bethany was entitled to a new trial due to the misconduct of Appellant's trial counsel. (**Id.** at 17-21).

On December 5, 2019, Appellant filed a *praecipe* to enter judgment in favor of Bethany and against Appellant. Appellant timely filed a notice of appeal on December 6, 2019. On December 9, 2019, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on December 30, 2019.

Appellant now raises four issues for our review:

Whether, viewing the entire record in the light most favorable to [Appellant], the verdict winner, and, granting him every favorable inference therefrom, there was sufficient, competent evidence to sustain the verdict, and therefore, the trial court erred and/or abused its discretion when it granted Judgment NOV in favor of Appellee Bethany … on the bases that [Appellant] failed to adduce evidence at trial sufficient to establish that: (1) Bethany breached any duty to [Decedent]; and/or (2) that Bethany proximately caused [Decedent's] death?

Whether Bethany waived its challenge to the jury's verdict based upon its challenge to the sufficiency of the evidence adduced at trial regarding the proximate cause of [Decedent's] death?

Whether, on the sole basis of counsel for [Appellant's] alleged "pervasive misconduct" during trial, the trial court erred and/or committed an abuse of discretion in finding that it would have granted a new trial if it had not granted JNOV where: the alleged "misconduct" was questionable; the trial court took affirmative steps to cure any harm before the jury; and where Bethany never moved for a mistrial nor accepted the trial court's multiple *sua sponte* offers to Bethany to declare a mistrial?

Whether the trial court erred and/or committed an abuse of discretion in granting summary judgment in favor of [Norfolk] by finding that the Pennsylvania Railroad Civil Immunity Statute, 42 Pa.C.S. § 8339.1, applied to immunize Norfolk from any liability in this case due to its finding that [Decedent] was a "trespasser" upon the train tracks on the night of her death and/or that Norfolk's conduct did not constitute a "willful or wanton failure to guard or warn against" being struck by a freight train, despite the supplementation of the summary judgment record by [Appellant] in his opposition to summary judgment to include the report of an expert in railroad operations and safety, concluding that Norfolk's train engineer acted recklessly, wantonly and improperly and with indifference and disregard of human life?

(Appellant's Brief at 5-7).

The following standard governs our review of a trial court's decision to grant JNOV:

> In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard[s] of review when considering motions for a directed verdict and [JNOV] are identical. We will reverse a trial court's grant or denial of a [JNOV] only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.
>
> There are two bases upon which a [JNOV] can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Reott v. Asia Trend, Inc.*, 7 A.3d 830, 835 (Pa.Super. 2010), *affirmed*, 618 Pa. 228, 55 A.3d 1088 (2012) (quoting *Campisi v. Acme Markets, Inc.*, 915 A.2d 117, 119 (Pa.Super. 2006)).

In his first issue, Appellant cites testimony from Bethany's employees to establish the duties it owed to Decedent, as well as the ways in which Bethany breached those duties. Appellant alleges that Bethany employees did not receive training on what to do when a child runs away from the facility, and Bethany failed to provide employees with relevant information about Decedent's background or the likelihood that she might run away. Appellant

- 7 -

relies on testimony from James Taylor, who worked inside Decedent's residence hall,[3] for the proposition that Bethany "had to know" that its residence hall staff could not always keep the children they supervised in auditory or visual range. (Appellant's Brief at 32). Based upon the foregoing, Appellant insists Bethany breached duties by failing to provide proper training to its employees, failing to have adequate procedures for dealing with runaway children, and failing to provide proper supervision of Decedent.

Appellant also relies on testimony from Brian Hazlak, a Pennsylvania Department of Human Services ("DHS") employee, who investigated the events leading to Decedent's death. Appellant emphasizes Mr. Hazlak's testimony that his department prepared a report to cite Bethany for a violation of 55 Pa. Code § 3800.55(a), a regulation governing children's residential facilities in Pennsylvania.[4] Appellant argues that Mr. Hazlak's testimony and the violation report confirm that Bethany breached its duty to provide proper supervision of Decedent, and the court should not have granted JNOV based

_____

[3] At the time of her death, Decedent lived in a building on Bethany's campus known as Dubbs Cottage. (*See* N.T. Trial, 3/29/19 afternoon session, at 8). Throughout the record, the building is referred to as "Dubbs," the "cottage," or the "cabin."

[4] Appellant explains that "[t]he description of the violation states that [at] the time [Decedent] eloped neither of the two Bethany staff members present at the Dubbs Cottage … were in 'visual or auditory range' of her during the time [Decedent] left the cottage." (Appellant's Brief at 36) (citing N.T. Trial, 3/29/19 morning session, at 70).

upon a finding of insufficient evidence to establish a breach of duty.

Regarding the element of causation, Appellant contends "the trial court held that [Decedent] committed suicide, although that question was never put to the jury." (*Id.* at 41). Appellant claims the court "made that unilateral finding of fact, because such a finding was a necessary factual predicate to the trial court's conclusion that Bethany was relieved of liability based upon the lack of proximate causation."[5] (*Id.*) Appellant maintains the issue of suicide was not pled or stipulated, Bethany bore the burden of proving suicide as an affirmative defense, and the question of whether Decedent committed suicide should have gone to the jury. Appellant complains the court could not have unilaterally determined that Decedent committed suicide as a basis for granting JNOV, and the court's analysis of the proximate cause issue was flawed. Appellant concludes this Court must vacate the order granting JNOV on these bases. We disagree.

"In trying to recover for an action in negligence, a party must prove four elements." *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1286 (Pa.Super. 2005), *appeal denied*, 587 Pa. 731, 901 A.2d 499 (2006).

They are:

1. A duty or obligation recognized by law.

---

[5] Appellant adds that "[o]nce the trial court pronounced that [Decedent's] death was by suicide, it was able to parrot Bethany's post-trial motion and brief and conclude that since Pennsylvania Courts have generally held that suicide is an intervening act, it relieves the original tortfeasor of liability." (Appellant's Brief at 41).

2. A breach of the duty.

3. Causal connection between the actor's breach of the duty and the resulting injury.

4. Actual loss or damage suffered by complainant.

*Id.* (emphasis omitted).

"The burden of proving the existence of negligence rests upon the party who has asserted it." ***Schmoyer by Schmoyer v. Mexico Forge, Inc.***, 649 A.2d 705, 707 (Pa.Super. 1994). "The mere fact that an accident has occurred does not entitle the injured person to a verdict. A plaintiff must show that the defendant owed a duty of care, and that this duty was breached." ***Rauch v. Mike-Mayer***, 783 A.2d 815, 824 n.8 (Pa.Super. 2001), *appeal denied*, 568 Pa. 634, 793 A.2d 909 (2002) (internal citations omitted).

"The duty which is owed in any given situation depends primarily upon the relationship between the parties at the time of the injury." ***Schmoyer, supra*** at 708. "Unless there is a special relationship between the defendant and the plaintiff, the only duty owed by the defendant to the plaintiff is the general duty imposed upon all persons not to expose others to risks of injury which are reasonably foreseeable." ***Id.***

"Under Pennsylvania law, the issue of whether a defendant has breached its duty is normally submitted to the jury." ***Truax v. Roulhac***, 126 A.3d 991, 1000 (Pa.Super. 2015) (*en banc*), *appeal denied*, 634 Pa. 737, 129 A.3d 1244 (2015).

> While the existence of a duty is a question of law, whether there has been a neglect of such duty is generally for the jury. However, the issue of whether an act or a failure to act constitutes negligence may be removed from consideration by a jury and decided as a matter of law when the case is free from doubt and there is no possibility that a reasonable jury could find negligence.

*Id.* at 1000-01 (quoting ***Emerich v. Philadelphia Center for Human Development, Inc.***, 554 Pa. 209, 233, 720 A.2d 1032, 1044 (1998)). "The violation of a statute may serve as the basis for a finding of negligence *per se*; this concept establishes both duty and breach of duty where an individual violates an applicable statute, ordinance or regulation designed to prevent a public harm." ***Campo v. St. Luke's Hosp.***, 755 A.2d 20, 25 (Pa.Super. 2000), *appeal denied*, 564 Pa 723, 766 A.2d 1242 (2001).

Additionally, the purpose of Chapter 3800 of the Pennsylvania Administrative Code "is to protect the health, safety and well-being of children receiving care in a child residential facility through the formulation, application and enforcement of minimum licensing requirements."[6] 55 Pa. Code § 3800.1. Chapter 3800 mandates that "[t]here shall be one child care worker present with the children for every eight children who are 6 years of age or older, during awake hours." 55 Pa. Code § 3800.55(a). "While children are at the facility, children shall be supervised during awake and sleeping hours by conducting observational checks of each child at least every hour." 55 Pa.

---

[6] Bethany "is a residential congregate care facility for children," subject to the requirements of Chapter 3800. (Bethany's Brief at 4).

- 11 -

Code § 3800.57(a).

Instantly, Appellant provided trial testimony from Mr. Hazlak, a licensing supervisor at DHS. Mr. Hazlak testified that his department has oversight responsibilities for "Chapter 3800 licensed residential facilities for children" in the Northeast region of the Commonwealth. (N.T. Trial, 3/29/19 morning session, at 57). The day after Decedent's death, Mr. Hazlak's supervisor instructed him to visit Bethany's campus and investigate the incident. When Mr. Hazlak arrived on campus, he interviewed staff members and discovered that they had found a suicide note in Decedent's bedroom. (*See id.* at 60). Mr. Hazlak reviewed Decedent's file "to measure it for regulatory compliance and to try to piece together what had happened … to see if the facility had done everything in its power to keep the child safe." (*Id.* at 61). Mr. Hazlak also conducted a walk-through of Decedent's residence hall and reviewed security camera footage. After viewing the footage, Mr. Hazlak estimated that Bethany personnel did not have contact with Decedent for about an hour before her death.

Based upon Mr. Hazlak's investigation, DHS issued a violation report due to Bethany's noncompliance with Chapter 3800. The report "indicated that [Bethany] had violated Regulation 3800.55(a), which states there would be one child care worker present with the children for every eight children who

are six years of age or older, during awake hours."[7]  (***Id.*** at 69).  The report also claimed that Decedent was in her bedroom on the second floor of the residence hall, while two Bethany staffers, Patricia Miske and Mr. Taylor, were on the first floor.  Although Bethany had an adequate number of staffers in the residence hall based on the number of children present, the report determined that the staffers "were not in visual or auditory range" of Decedent when she "walked down the central stairway and exited the building through the basement emergency exit…."  (***Id.*** at 70).

On cross-examination, Mr. Hazlak explained that Regulation 3800.55(a) does not include a requirement that child care workers remain in visual or auditory range of the children, but the "compliance guide" issued in conjunction with the Chapter 3800 regulations includes such a requirement. (***See id.*** at 83, 86).  Further, during his walk-through of Decedent's residence hall, Mr. Hazlak and his coworker "tested whether or not one could hear someone walking around upstairs while the other remained" on the first floor of the residence hall.  (***Id.*** at 89).  When asked whether someone on the first floor could hear someone on the second floor talking, Mr. Hazlak responded, "Not often."  (***Id.*** at 89).  Mr. Hazlak subsequently clarified, "If there was a fight going on and there [were] raised voices, you would be able to" hear it.

---

[7] At the time of Mr. Hazlak's inspection, eleven (11) dependent children were living in Decedent's residence hall.  (***See*** N.T. Trial, 3/29/19 morning session, at 68).  Bethany's license limited capacity to twelve (12) children inside this residence hall.  (***Id.*** at 67).

(*Id.*)

Bethany's counsel also confronted Mr. Hazlak with additional facts included within the DHS violation report:

> [DEFENSE COUNSEL]: And you said no one had seen [Decedent] for an hour?
>
> [WITNESS]: Correct.
>
> [DEFENSE COUNSEL]: Your own report says that she came downstairs within 15 minutes or 20 minutes of leaving the cottage, does it not?
>
> Look at your report. It says at 8:00 she got meds. [Decedent] got meds. That's eyes on, isn't it?
>
> [WITNESS]: Yes.
>
> [DEFENSE COUNSEL]: That's auditory too, isn't it?
>
> [WITNESS]: Yes.
>
> [DEFENSE COUNSEL]: At 8:15 she asked for an aspirin?
>
> [WITNESS]: Yes.
>
> [DEFENSE COUNSEL]: That's eyes on, isn't it?
>
> [WITNESS]: Yes.
>
> [DEFENSE COUNSEL]: That's eyes on and ears on, right, because someone had to … hear her say, I want an aspirin, right?
>
> [WITNESS]: Correct.
>
> [DEFENSE COUNSEL]: So what you just said on the stand that no one saw her or supervised her for an hour is simply not true, isn't that correct?
>
> [WITNESS]: I suppose it is.

(*Id.* at 92-93). Despite this concession, on redirect examination, Mr. Hazlak reiterated that his inspection led DHS to conclude that Bethany had violated Regulation 3800.55(a). (*See id.* at 95-96).

Significantly, the trial court evaluated Mr. Hazlak's testimony and determined it did not demonstrate a violation of Regulation 3800.55(a).

> Mr. Hazlak did little in way of establishing [Bethany's] failure to properly supervise the children under its care. The citation [Appellant] emphasizes does not prove [Bethany] breached a duty. Instead, Mr. Hazlak's testimony obfuscates facts and amplifies inaccuracies that border upon impermissible. Chief among these is Mr. Hazlak's assertion that [D]ecedent was not supervised for the hour prior to her leaving [Bethany's] premises. During cross-examination, Mr. Hazlak was forced to admit that was simply not true. Mr. Hazlak's report states that [Decedent] received medication at 8:00 p.m. and then asked for aspirin at 8:15 p.m. These two interactions demonstrate that [Decedent] was in auditory and visual range in the hour prior to her departure, and that [Bethany] was compliant with the Commonwealth's Regulations.
>
> Although the "auditory range" is not contained within the Regulations, testimony from [Bethany's] staff members demonstrates [Bethany] was compliant regardless—that the children were in auditory range of staff members. Elaine Gilbert[, an administrator for Bethany,] testified extensively that staff members on the first floor can hear the children moving around on the second floor—sometimes even talking in their bedrooms. Ms. Gilbert testified that staff "can tell where the kids are just from noises that we hear on the first floor."
>
> \*     \*     \*
>
> The testimony of Patricia Miske likewise stated that on the night [Decedent] left [Bethany's] property, she could "hear [the children] walking and talking" and that she "could hear the girls moving around…. [She] could hear the showers going. You knew they were up there." [Appellant] asserts

- 15 -

> … that a DHS worker conducted a test the very next day and determined they were not in appropriate visual or auditory range for the children. This is a patent mischaracterization of the witness testimony. In fact, Mr. Hazlak testified that he conducted a test and found that staff would be able to hear from the first floor if there was a fight, raised voices, crying or if a child is in danger on the second floor. Each of these witnesses demonstrates that [Bethany] was actually in compliance with the Regulations.

(Trial Court Opinion at 7-8) (internal record citations omitted).

Even when considering Mr. Hazlak's testimony in the light most favorable to Appellant as the verdict winner, the court correctly observed that Bethany actually complied with Regulation 3800.55(a) on the night of Decedent's death. **See Reott, supra**. As Appellant failed to demonstrate a violation of Regulation 3800.55(a), Bethany could not have breached a duty on this basis. **See Campo, supra**. Moreover, Appellant failed to present additional testimony to establish a breach of duty on some other basis.[8] On

_____

[8] In its brief, Bethany contends this case involved "a non-secure residential facility for youths from troubled family situations," which "is subject to extensive regulations." (Bethany's Brief at 20-21). As such, Bethany argues that Appellant should have presented an expert to testify about liability at trial. "[E]xpert testimony is often employed to help jurors understand issues and evidence which is outside of the average juror's normal realm of experience. We have stated that, [t]he employment of testimony of an expert rises from … a necessity born of the fact that the subject matter of the inquiry is one involving special skill and training beyond the ken of the ordinary layman." **Brandon v. Ryder Truck Rental, Inc.**, 34 A.3d 104, 108 (Pa.Super. 2011) (quoting **Young v. Com., Dept. of Transp.**, 560 Pa. 373, 376-77, 744 A.2d 1276, 1278 (2000)). Here, Appellant seemingly acknowledged the need for some expert testimony, as he offered a witness to testify as an expert in the field of residential treatment facilities. (**See** N.T. Trial, 4/3/19, at 44-49). Bethany's counsel objected to the proposed expert's

this record, the court did not err in concluding that Appellant presented insufficient evidence to establish a breach of duty by Bethany. *See Truax, supra*; *Schmoyer, supra*. Therefore, the court properly granted JNOV on this basis alone, and Appellant is not entitled to relief on his first claim.[9] *See Reott, supra*.

In his second issue, Appellant argues Bethany waived its challenge to the sufficiency of the evidence regarding the proximate cause of Decedent's death. As we have already determined that the court properly granted JNOV based upon the sufficiency of the evidence regarding breach of duty, we need not address this claim.

In his third issue, Appellant contends the court erred in determining that Bethany was entitled to a new trial due to the misconduct of Appellant's trial counsel. Again, as we have already determined that the court properly

---

qualifications, the court sustained the objection, and Appellant did not ultimately present any expert testimony. Although Appellant now attempts to argue that testimony from its lay witnesses, including Mr. Taylor, was sufficient to establish Bethany's breach of duty, we agree with Bethany's argument that some expert testimony was required to establish Bethany's breach of the relevant standard of care for its industry. *See Brandon, supra*.

[9] Because the court properly granted JNOV based upon its finding that Appellant presented insufficient evidence to establish a breach of duty, we need not address Appellant's related argument regarding the evidence in support of causation.

granted JNOV, we need not address this argument related to an alternative basis for relief set forth in Bethany's post-trial motions.[10]

In his fourth issue, Appellant contends the trial court applied Pennsylvania's railroad civil immunity statute to find that Norfolk was immune from suit. For civil immunity to apply, Appellant asserts "Norfolk must not have willfully or wantonly failed to guard or warn against a dangerous condition, use or activity on its property or by its trains." (Appellant's Brief at 50). Appellant insists he produced an expert report in response to Norfolk's summary judgment motion, which opined that Norfolk's train engineer acted recklessly, wantonly, and with indifference and disregard for human life. Appellant concludes the court completely disregarded his expert report and improperly granted summary judgment in favor of Norfolk.[11] We disagree.

_____

[10] Although we need not address this argument, our review of the record confirms the court's finding of pervasive misconduct on the part of Appellant's trial counsel. (**See** Trial Court Opinion at 17-21). We cannot condone trial counsel's actions in litigating this case, and we emphasize that such misconduct alone could justify the granting of a new trial. **See Buttaccio v. American Premier Underwriters, Inc.**, 175 A.3d 311 (Pa.Super. 2017) (stating sheer number of counsel's improper references can prejudice opposing party, even where court issues curative instructions; attorneys may not make irrelevant remarks that are reasonably likely to have direct and prejudicial effect on award of damages; and court may abuse its discretion if it fails to grant mistrial in response to counsel's prejudicial remarks).

[11] Norfolk's brief advances two arguments in response to Appellant's claim: 1) Appellant did not plead that Norfolk acted willfully or wantonly, and he is not challenging the trial court's order denying his motion to amend the complaint; and 2) although Appellant relies on his expert report to establish that Norfolk acted wantonly, the court ruled that the report was not part of the summary

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. ***Mee v. Safeco Ins. Co. of America***, 908 A.2d 344, 347 (Pa.Super. 2006).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

***Miller v. Sacred Heart Hosp.***, 753 A.2d 829, 832 (Pa.Super. 2000) (internal citations and quotation marks omitted). Our scope of review is plenary. ***Pappas v. Asbel***, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied*, 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002). In reviewing a trial court's grant of summary judgment:

> [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.
>
> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of

---

judgment record, and Appellant is not challenging this ruling on appeal. (***See*** Norfolk's Brief at 9-13).

action.   Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.   In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.   Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

***Chenot v. A.P. Green Services, Inc.***, 895 A.2d 55, 61 (Pa.Super. 2006)

(internal citations and quotation marks omitted).

Regarding immunity, Section 8339.1 provides as follows:

### § 8339.1.  Railroad civil immunity

**(a)   General rule.—**A railroad carrier owes no duty of care to keep its railroad property safe for entry or use by any trespasser who enters upon any railroad property or railroad right-of-way or to give any warning to such trespasser entering or going on that railroad property of a dangerous condition, use or activity thereon.  Except as set forth in subsection (b), a railroad carrier shall not:

(1)   Be presumed to extend any assurance to a trespasser entering or going on railroad property without the railroad carrier's consent that the railroad property is safe for any purpose.

(2)   Incur any duty of care toward a trespasser entering or going on railroad property without the railroad carrier's consent.

> (3)  Become liable for any injury to a trespasser entering or going on railroad property without the railroad carrier's consent caused by an act or omission of such trespasser.
>
> **(b)  Limitation.**—Nothing in this section limits in any way any liability which otherwise exists for willful or wanton failure to guard or warn against a dangerous condition, use or activity.
>
> (c)  Definitions.—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:
>
> "Trespasser."  A person who enters onto railroad property without any right, lawful authority or the express consent of the railroad.

42 Pa.C.S.A. § 8339.1.  ***See also Marsh v. Norfolk Southern, Inc.***, 243 F.Supp.3d 557 (M.D.Pa. 2017) (explaining that under Pennsylvania law, burden is on trespasser to prove willfulness or wantonness, as required to impose duty on property owner); ***Manfred v. National R.R. Passenger Corp.***, 106 F.Supp.3d 678 (W.D.Pa. 2015) (stating railroad did not have duty under Pennsylvania law to install fence, erect barricades, or put up warning signs at right of way where pedestrian was struck and killed by train; danger of entering railway was too obvious for railroad to believe that trespassers would not have discovered it).

Instantly, Appellant argues that the court totally disregarded the expert opinion of Mr. Beall, who opined that Norfolk acted wantonly through the actions of its engineers.  Appellant, however, ignores the fact that the court denied his motion for extraordinary relief, which requested the extension of

the deadline for the submission of the expert report. In light of the fact that the court did not extend the discovery deadline, and absent some specific argument regarding how the court erred in denying his motion for extraordinary relief, we decline to conclude that the court improperly ignored the expert report. *See Anthony Biddle Contractors, Inc. v. Preet Allied American Street, LP*, 28 A.3d 916, 922-23 (Pa.Super. 2011) (asserting Philadelphia's case management system is designed to implement and enforce discovery deadlines as essential means for controlling trial courts' overcrowded dockets; only mechanism to extend discovery deadlines is through filing petition for extraordinary relief; when case management deadlines are violated with impunity, abusing party must be prepared to pay consequences).[12] *See also Manfred, supra* (holding estate of pedestrian

---

[12] In his reply brief, for the first time on appeal, Appellant offers an argument regarding why the court erred in refusing to consider its expert report. We emphasize, however, "[a] claim is waived if it is raised for the first time in a reply brief." *Wolf v. Scarnati*, ___ Pa. ___, ___, 233 A.3d 679, 704 (2020). We also acknowledge that an appellant "may file a brief in reply to matters raised by appellee's brief … and not previously addressed in appellant's brief." Pa.R.A.P. 2113(a). Nevertheless, Appellant's reply brief includes extensive analysis of the Pennsylvania Rules of Civil Procedure and decisional law relating to summary judgment matters. Such analysis far exceeds the scope of the assertions raised in Norfolk's brief. (*See* Norfolk's Brief at 9-13).

Moreover, Appellant relies on *Gerrow v. John Royle & Sons*, 572 Pa. 134, 813 A.2d 778 (2002), for the proposition that he properly "filed and presented" his expert report prior to the order disposing of Norfolk's summary judgment motion. (Appellant's Reply Brief at 11). Initially, we note that *Gerrow* is "a plurality decision of our Supreme Court with no precedential value[.]" *Downey v. Crozer-Chester Medical Center*, 817 A.2d 517, 528

who was struck and killed by train while walking, as trespasser, on railroad's track failed to present evidence demonstrating that train's engineer acted willfully or wantonly so as to establish railroad's liability under Pennsylvania law; engineer was not guilty of wanton misconduct for not applying emergency brake to slow or stop train until after he realized that pedestrian was not going to respond to the train's horn). Therefore, Appellant is not entitled to relief on his fourth claim, and we affirm the judgment entered in favor of Bethany and against Appellant.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/26/21

_____

(Pa.Super. 2003) (*en banc*), *affirmed*, 577 Pa. 672, 842 A.2d 406 (2004). Further, "the majority [in **Gerrow**] appears to agree that expert opinions can be attached to a response to a motion for summary judgment pursuant to Pa.R.C.P. 1035.3(b)." **Id.** (footnote omitted). In the instant case, we reiterate that Appellant did not actually attach his expert report to his answer to Norfolk's summary judgment motion. Rather, almost two months after filing his answer, Appellant filed a *praecipe* to attach the expert report to his answer.